

STATE OF RHODE ISLAND    SUPERIOR COURT
PROVIDENCE, S.C.

DUFFY & SWEENEY, LTD; MICHAEL F. )
SWEENEY, )
 )
     *Plaintiffs*, )
    v. )  C.A. No. _____
 )
OLD REPUBLIC INSURANCE COMPANY, )
 )
     *Defendant*. )
 )

## COMPLAINT

Plaintiffs Duffy & Sweeney, LTD. and Michael F. Sweeney, by and through their undersigned attorneys, allege as follows:

### Parties

1. Plaintiff, Duffy & Sweeney, LTD. ("Duffy & Sweeney"), is a professional service corporation with its principal place of business located at One Financial Plaza, Suite 1800 in Providence, Rhode Island.

2. Plaintiff, Michael F. Sweeney, is shareholder of Duffy & Sweeney and is a Rhode Island resident.

3. Defendant, Old Republic Insurance Company ("Old Republic"), is a Pennsylvania corporation with its principal place of business in Illinois.

### Jurisdiction and Venue

4. The Court has jurisdiction over this matter pursuant to the Uniform Declaratory Judgments Act, R.I. Gen. Laws §§ 9-30-1, *et seq.* Under the Uniform Declaratory Judgments Act,

1

Case Number: PC-2018-5840
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 3 of 97 PageID #: 8

the Superior Court has the "power to declare rights, status, and other legal relations whether or not relief is or could be claimed."

5.      The Court also has jurisdiction over this matter pursuant to R.I. Gen. Laws § 8-2-13, which gives the Superior Court "exclusive original jurisdiction of suits and proceedings of an equitable character . . . ."

6.      Venue is proper pursuant to R.I. Gen. Laws §§ 9-4-1 and/or 9-4-2.

### Background

7.      The Plaintiffs maintain a Lawyers Professional Liability Insurance policy with Old Republic (ORPRO 39405) with an effective policy period from April 19, 2017 to April 19, 2018 and an extended policy period (hereinafter "Policy" and attached hereto as Exhibit A).

8.      Section 1 of the Policy provides as follows:

The COMPANY shall pay on behalf of the INSURED all sums in excess of the deductible which the INSURED shall become legally obligated to pay as DAMAGES as a result of any CLAIMS first made against the INSURED during the POLICY PERIOD and reported in writing to the COMPANY during the POLICY PERIOD or within thirty (30) days after the end of the POLICY PERIOD. The CLAIM must be caused by an act, error or omission of the INSURED committed in the performance of PROFESSIONAL SERVICES for others and committed on or after the RETROACTIVE DATE.

9.      Section 3(a) of the Policy defines "claim" as "a demand or assertion of a right and includes the service of suit or institution of arbitration proceedings against the INSURED. A CLAIM shall be deemed first made when written notice of the CLAIM is first received by the INSURED."

10.     Section 3(c) of the Policy defines "damages" as "monetary judgment, award or settlement."

11.     Section 3(j) of the Policy defines "professional services" as "services rendered by the INSURED as: (1) A lawyer or notary public; or (2) an administrator, conservator, executor,

2

receiver, guardian or trustee, or in any similar fiduciary capacity, provided such services are rendered in connection within the NAMED INSURED'S or PREDECESSOR FIRM'S practice of law."

      12.     Beginning in and around 2014, the Plaintiffs began their legal representation of BR Asset Management, LLC ("BRAM") in connection with BRAM's attempt to acquire and/or license the BENRUS trademark from MZB Berger & Sons in New York.

      13.     In April of 2016, following BRAM's securing licensing rights, PalmLake Group, LLC (an entity for which Mr. Sweeney serves as a disclosed manager) entered into a purchase order purchase agreement with BRAM (also known as Benrus, LLC) to fund manufacturing to fill outstanding retail orders of products bearing the BENRUS trademark.

      14.     Ultimately, BRAM experienced irreparable cash flow problems and, on December 4, 2017, a creditor of BRAM, NIR Retail, LLC, filed a Petition for Appointment of a Receiver in the Rhode Island Superior Court, docketed as *NIR Retail, LLC v. BR Asset Management, LLC*, PC-2017-5819.

      15.     On January 2, 2018, Attorney Richard L. Gemma was appointed as the Permanent Receiver for BRAM (the "Receiver") by the Honorable Justice Michael Silverstein of the Rhode Island Superior Court.

      16.     On May 25, 2018, the Receiver filed a five count complaint against Duffy & Sweeney and its shareholder, Michael F. Sweeney alleging usury, violation of the Racketeering & Corrupt Organizations Act under Rhode Island law, civil liability for criminal conduct under Florida law and estoppel ("Receiver's Complaint" and attached hereto as Exhibit B).

Case Number PC-2018-6091
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 5 of 97 PageID #: 10

17.    The Receiver Complaint alleges that "[i]n or around 2014, BRAM f/k/a Benrus, engaged Defendants Sweeney and D&S to provide it legal counsel and representation." Exhibit B, at ¶ 8.

18.    The Receiver's Complaint alleges that "[a]t all times relevant hereto, Defendants Sweeney and D&S provided legal counsel and representation to BRAM f/k/a Benrus." Id. at ¶ 9.

19.    The Receiver's Complaint alleges that, in April of 2016, BRAM was in need of funding and that PalmLake Group, LLC (a co-defendant) agreed to provide a "bridge loan" to BRAM. Id. at ¶ 17.

20.    The Receiver's Complaint avers that "[o]n April 20, 2016, Defendant Sweeney advised BRAM f/k/a Benrus that Jean Harrington, an attorney employed by Defendant D&S, would prepare 'simple loan/security' documents for 'the bridge loan for the backpacks.'" Id. at ¶18.

21.    The Receiver's Complaint alleges that PalmLake and BRAM entered into a purchase order purchase agreement which "was negotiated and drafted by Defendants Sweeney and D&S on behalf of Defendant PalmLake and all parties." Id. at ¶¶ 20-21.

22.    The Receiver further alleges as follows:

At no relevant time did Defendants Sweeney or D&S (or anyone else) ever comply with Rule 1.8 of the Rhode Island Rules of Professional Conduct and:
   a. advise BRAM f/k/a Benrus in writing of the desirability of seeking, and give it a reasonable opportunity to seek, the advice of independent legal counsel on the financing transaction; or
   b. obtain BRAM f/k/a Benrus's informed consent, in a signed writing, to the essential terms of the transaction and Defendants Sweeney and D&S's role in the transaction, including whether Defendants Sweeney and D&S were representing BRAM f/k/a Benrus on the financing transaction.

Id. at ¶ 22.

23.    The Receiver's Complaint avers as follows:

Case Number PC-2018-6019
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 6 of 97 PageID #: 11

Defendants Sweeney and D&S included in the Agreement the following so-called "governing law" provision:

> **Governing Law.** This agreement and all transactions contemplated hereby shall be governed by, construed and enforced in accordance with the laws of the State of Florida, exclusive of its choice of law rules. THE PARTIES HEREIN WAIVE TRIAL BY JURY AND AGREE TO SUBMIT TO THE PERSONAL JURISDICTION AND VENUE OF A COURT OF SUBJECT MATTER JURISDICTION LOCATED IN RHODE ISLAND. In addition to any other relief to which [Defendant PalmLake] may be entitled, BENRUS agrees to reimburse [Defendant PalmLake] for [Defendant PalmLake's] reasonable attorney's fees, court costs, and all other expenses, whether or not taxable by the court as costs, incurred in enforcing its rights under this Agreement, including, without limitation, in enforcing the security interest granted herein and/or preserving the collateral subject thereto.

*Id.* at ¶ 23.

24.    The Receiver's Complaint alleges that "Defendants Sweeney and D&S included the above Florida choice of law and waiver of jury trial in an attempt to evade Rhode Island law, § 6-26-1, et seq., and to deprive BRAM f/k/a Benrus of its right to a jury trial." *Id.* at ¶ 24.

25.    The Receiver's Complaint alleges that two addenda to the purchase order purchase agreement were "negotiated and drafted by Defendants Sweeney and D&S on behalf of Defendant PalmLake and all parties." *Id.* at ¶¶ 27, 30.

26.    With respect to the addenda, the Receiver's Complaint alleges as follows:

At no relevant time did Defendants Sweeney or D&S (or anyone else) ever comply with Rule 1.8 of the Rhode Island Rules of Professional Conduct and:
a. advise BRAM f/k/a Benrus in writing of the desirability of seeking and give it a reasonable opportunity to seek, [sic] the advice of independent legal counsel on the [addenda transactions]; or
b. obtain BRAM f/k/a Benrus's informed consent, in a signed writing, to the essential terms of the transaction and Defendants Sweeney and D&S's role in the transaction, including whether Defendants Sweeney and D&S were representing BRAM f/k/a Benrus on the [addenda transactions].

*Id.* at ¶¶28, 31.

27.    The Receiver further alleges that the April 2016 purchase order purchase agreement constitutes usury in violation of Rhode Island and Florida law and that purchase order purchase

5

Case Number: PC-2018-6113
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 7 of 97 PageID #: 12

transaction constitutes a violation of the Racketeering & Corrupt Organizations Act under Rhode

Island.

28.     The Receiver's Complaint alleges as follows:

On April 20 and 21, 2016, in the course of negotiations with BRAM f/k/a Benrus
at a time when Defendants Sweeney and D&S represented BRAM f/k/a Benrus,
Defendants Sweeney and D&S affirmatively represented to BRAM f/k/a Benrus,
that the financing transaction being negotiated was a "loan," a "bridge loan," and a
"bridge loan for the backpacks," . . . .

*Id.* at ¶ 62.

29.     The Receiver's Complaint avers that "[o]nce a claim was made that the transaction

was usurious, Defendants Sweeney and PalmLake have tried to mischaracterize the arrangement

as a factoring agreement" and that "[s]uch behavior by a lawyer dealing with an otherwise

unrepresented client is a gross violation of ethical standards binding on lawyers who enter into

business transactions with their own clients." *Id.* at ¶¶65-66.

30.     Based on these allegations, the Receiver's Complaint seeks $2,608,582.50, plus

interest, costs and attorneys' fees. *Id.*

31.     On July 30, 2018, the Receiver filed an amended complaint in the Rhode Island

Superior Court asserting additional allegations against the Plaintiffs.

32.



(Exhibit B and ⬛⬛⬛⬛⬛ hereinafter the "Claims.")

33.     The Plaintiffs gave Old Republic timely notice of the Claims.

34.     On June 18, 2018, Old Republic transmitted a letter denying coverage and stating

that the Claims are excluded under the Policy.

Case Number PC-2018-6011
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 8 of 97 PageID #: 13

35.     On June 22, 2018, counsel for the Plaintiffs transmitted a letter detailing the reasons why coverage exists for the Claims.

36.     On July 2, 2018, Old Republic transmitted correspondence reiterating their disclaimer of any obligation to defend or indemnify the Plaintiffs under the Policy. Old Republic insisted that "no coverage is provided and no defense obligation exists to the extent that there is no claim seeking damages in the performance of professional services by an insured."

37.     On July 30, 2018, Old Republic filed a lawsuit against the Plaintiffs and Richard Gemma, as Receiver for BR Asset Management, LLC f/k/a BENRUS, LLC in the United States District Court for the District of Rhode Island (docketed as *Old Republic Insurance Co. v. Duffy & Sweeney, Ltd. et al.*, C.A. 1:18-cv-00419).

38.     Old Republic's lawsuit violated Section 13 of the Superior Court's January 2, 2018 Order entered in *NIR Retail, LLC v. BR Asset Management, LLC*, PC-2017-5819 which provides as follows:

> That the commencement, prosecution, or continuance of the prosecution, of any action, suit, arbitration proceeding, hearing, or any foreclosure, reclamation or repossession proceeding, in law, or in equity or under any statute, or otherwise, against said Respondent or any of its property, in any Court, agency, tribunal, or elsewhere, or before any arbitrator, or otherwise by any creditor, stockholder, corporation, partnership or any other person, or the levy of any attachment, execution or other process upon or against any property of said Respondent, or the taking or attempting to take into possession any property in the possession of the Respondent or of which the Respondent have the right to possession, or the cancellation at any time during the Receivership proceeding herein of any insurance policy, lease or other contract with Respondent, by any of such parties as aforesaid, other than the Receiver designated as aforesaid, or the termination of telephone, electric, gas or other utility service to Respondent, by any public utility, without obtaining prior approval thereof from this Honorable Court, in which connection said Receiver shall be entitled to prior notice and an opportunity to be hear, are hereby restrained and enjoined until further Order of this Court.

39.     In the federal court lawsuit, Old Republic elected to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7

Case Number PC-2018-618
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

██████████████████████████████████ publicly disclosed Duffy & Sweeney's annual gross income (despite redacting the premium rate).

40.    On July 31, 2018, undersigned counsel transmitted a correspondence demanding, inter alia, that Old Republic withdraw its publicly filed federal court complaint and take all steps necessary to preserve and protect Mr. Sweeney's confidentiality ███████████████████ ██████████

41.    On August 1, 2018, Old Republic's counsel responded refusing to take any steps to preserve and protect Mr. Sweeney's confidentiality ███████████████████████████ ██████

42.    On August 1, the Plaintiffs filed an Emergency Motion for a Protective Order seeking the Court's order to redact or seal the confidential contents of the federal court complaint.

43.    On August 2, Magistrate Judge Lincoln Almond ordered that Old Republic's federal court complaint and Exhibit C thereto be sealed.

44.    On August 6, 2018, Old Republic publicly filed its Memorandum in Response to Michael Sweeney's Emergency Motion for a Protective Order which again publicly disclosed ██ ████████████████████████████████████████████████ ███████████████

45.    Following the Plaintiffs' immediate demand to seal the Memorandum, on August 7, Old Republic filed a Motion to Seal the Memorandum "until the issues which the defendant has raised regarding the sealing or redacting of documents to be filed in this action are resolved by the Court."

8

## COUNT I
## BREACH OF CONTRACT

46.    The Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47.    Defendant Old Republic has committed a breach of contract by failing to fully and completely defend and indemnify Plaintiffs against the Claims pursuant to the terms of the Policy.

48.    Plaintiffs have performed all conditions precedent pursuant to the Policy, including the payment of all premiums.

49.    As a result of Defendant's breach of contract, the Plaintiffs have been directly and financially damaged.

## COUNT II
## DECLARATORY JUDGMENT

50.    The Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51.    An actual controversy exists between the Plaintiffs and Defendant concerning the Defendant's denial of coverage under the Policy.

52.    Plaintiffs have performed all conditions precedent pursuant to the Policy, including the payment of all premiums.

53.    The Plaintiffs respectfully request an Order from this Court to declare the status, rights, obligations and other legal relations of the Plaintiffs and Defendant in regard to the Policy relative to the Claims.

## COUNT III
## VIOLATION OF R.I. GEN. LAWS § 9-1-33

54.    The Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 53 of this Complaint as if fully set forth herein.

9

Case Number: PC-2018-031
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 11 of 97 PageID #: 16

55.     The Defendant has wrongfully and in bad faith refused to timely perform its obligations under the Policy.

56.     The Plaintiffs have been directly and financially damaged by the Defendant's violation of R.I. Gen. Laws § 9-1-33.

**WHEREFORE**, the Plaintiffs respectfully request that the Court grant the following relief:

a.      An Order declaring that the Defendant has a duty to defend and/or indemnify the Plaintiffs in connection with the Claims under the terms of the Policy;

b.      Compensatory and punitive damages and reasonable attorneys' fees pursuant to R.I. Gen. Laws § 9-1-33;

c.      Reasonable attorneys' fees pursuant to R.I. Gen. Laws § 9-1-45;

d.      Prejudgment interest pursuant to R.I. Gen. Laws § 9-21-10; and

e.      Such other and further relief as the Court may deem just and proper.

**PLAINTIFFS HEREBY DEMAND TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Case Number: PC-2018-3984
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 12 of 97 PageID #: 17

Date:  August 21, 2018

RESPECTFULLY SUBMITTED,

**DUFFY & SWEENEY, LTD; MICHAEL
F. SWEENEY**

By their Attorneys,

/s/ William M. Dolan III
William M. Dolan III (#4524)
Jeffrey K. Techentin (#6651)
Nicholas L. Nybo (#9038)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI  02903-1345
Tel: (401) 274-7200
Fax: (401) 351-4607
wdolan@apslaw.com
jtechentin@apslaw.com
nnybo@apslaw.com

11

Case Number: PC-2018-0806
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.



# EXHIBIT A

Case Number: PC-18-00506
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 14 of 97 PageID #: 19



**OLD REPUBLIC INSURANCE COMPANY**

## Professional Liability Insurance Policy

**Issuing and Policyholder Servicing Office:**

**Old Republic Professional Liability, Inc.**
191 North Wacker Drive, Suite 1000
Chicago, IL 60606
Tel: (312) 750-8800
Fax: (312) 750-8965
www.oldrepublicpro.com



OLD REPUBLIC INSURANCE GROUP

Case Number: PC-2018-6040
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

Case 1:18-cv-00506-WES-LDA    Document 1-1    Filed 09/12/18    Page 15 of 97 PageID #: 20

# OLD REPUBLIC INSURANCE COMPANY
## GREENSBURG, PENNSYLVANIA

## DECLARATIONS

## LAWYERS PROFESSIONAL LIABILITY INSURANCE

> This is a claims made and reported policy with defense costs included in the limit of liability.
> Please read the entire policy carefully.

**Policy Number: ORPRO 39405**

**Item 1.  NAMED INSURED:**  Duffy & Sweeney, Ltd.

**Item 2.  PRINCIPAL ADDRESS:** 1800 Financial Plaza
Providence, RI  02903

**Item 3.  POLICY PERIOD:**   From:  April 19, 2017  To:  April 19, 2018
12:01 a.m. local time at the principal address stated above.

**Item 4.  LIMIT OF INSURANCE:**   $5,000,000  Each Claim and Aggregate

**Item 5.  DEDUCTIBLE:**    $50,000  Each Claim

**Item 6.  PREMIUM:**

**Item 7.  RETROACTIVE DATE:**  None   (If "None" is shown, no retroactive date applies.)

All notices required to be given to the Company under this policy shall be addressed to the Company c/o Old Republic Professional Liability, Inc., 191 North Wacker Drive, Suite 1000, Chicago, IL 60606-1905

The following forms and endorsements are attached to and made a part of this POLICY at POLICY issuance: Policy Jacket; ORUG-27 (09/2004); Endorsements #1 - E1072-1RI (09/2004); #2 - E1020 (09/2004); #3 - E1021 (09/2004); #4 - E1023 (09/2004); #5 - E1029 (09/2004); #6 - E1030 (09/2004); #7 - E1097 (06/2007); #8 - E1098 (07/2016); #9 - E1100 (07/2016); #10 - E5000 (09/2004) and Application dated April 7, 2017 and March 22, 2017.

**DATE:  May 4, 2017**

_Frank J. Kastilic_
Authorized Representative

# OLD REPUBLIC INSURANCE COMPANY

---

**IMPORTANT NOTICE**

THIS POLICY APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD OR WITHIN THIRTY (30) DAYS AFTER THE END OF THE POLICY PERIOD. UPON TERMINATION OF THE POLICY, AN EXTENDED REPORTING PERIOD MAY BE AVAILABLE FOR CERTAIN CLAIMS.

THE LIMIT OF INSURANCE SHALL BE REDUCED, AND MAY BE COMPLETELY EXHAUSTED, BY THE PAYMENT OF DAMAGES OR DEFENSE COSTS. THE COMPANY'S OBLIGATION TO DEFEND ANY CLAIM ENDS WHEN THE LIMIT OF INSURANCE IS EXHAUSTED.

THE POLICY CONTAINS A DEDUCTIBLE WHICH MUST BE PAID BY THE INSURED WITH RESPECT TO EACH CLAIM. THE COMPANY'S OBLIGATION TO PAY DAMAGES AND/OR DEFENSE COSTS APPLIES IN EXCESS OF THE DEDUCTIBLE.

VARIOUS PROVISIONS IN THE POLICY RESTRICT COVERAGE. PLEASE READ THE ENTIRE POLICY CAREFULLY TO DETERMINE YOUR RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

WORDS AND PHRASES PRINTED IN ALL CAPITAL LETTERS HAVE SPECIAL MEANINGS WHICH ARE SET FORTH IN SECTION 3, DEFINITIONS.

---

## Lawyers Professional Liability Insurance Policy

In consideration of the payment of the premium when due and in reliance upon the statements made and the information furnished by the INSURED to the COMPANY in the application, which is attached to and made part of this POLICY, and subject to all of the provisions of this POLICY, the COMPANY and the INSURED agree as follows:

### 1. Coverage

The COMPANY shall pay on behalf of the INSURED all sums in excess of the deductible which the INSURED shall become legally obligated to pay as DAMAGES as a result of any CLAIM first made against the INSURED during the POLICY PERIOD and reported in writing to the COMPANY during the POLICY PERIOD or within thirty (30) days after the end of the POLICY PERIOD. The CLAIM must be caused by an act, error or omission of the INSURED committed in the performance of PROFESSIONAL SERVICES for others and committed on or after the RETROACTIVE DATE.

### 2. Defense and Settlement of Claims

The COMPANY shall have the right and the duty to defend any CLAIM seeking DAMAGES to which this POLICY applies even if any allegations of the CLAIM are groundless, false or fraudulent. This right and duty to defend any CLAIM includes the selection of defense counsel and arbitrators.

The COMPANY may investigate any CLAIM as it deems necessary, but the COMPANY shall not settle any CLAIM without the INSURED'S consent. If, however, the INSURED refuses to consent to a settlement recommended by the COMPANY and acceptable to the claimant, the COMPANY'S liability for the CLAIM and DEFENSE COSTS shall not exceed the amount for which the CLAIM could have been settled and the DEFENSE COSTS incurred up to the time of such refusal, or the applicable limit of insurance, whichever is less.

The COMPANY shall not be obligated to defend or continue to defend any CLAIM after the applicable limit of insurance has been deposited with a court or exhausted by the payment of DAMAGES and/or DEFENSE COSTS.

Case Number: PB-2018-6044
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678514
Reviewer: Lynn G.

## 3. Definitions

(a)     CLAIM means a demand or an assertion of a right and includes the service of suit or institution of arbitration proceedings against the INSURED. A CLAIM shall be deemed first made when written notice of the CLAIM is first received by the INSURED.

(b)     COMPANY means the insurance company named in the Declarations.

(c)     DAMAGES means a monetary judgment, award or settlement. DAMAGES does not include:

    (1)     punitive or exemplary damages or any damages which are a multiple of compensatory damages, or sanctions, fines or penalties;

    (2)     the return or forfeiture of fees paid to the INSURED for PROFESSIONAL SERVICES; or

    (3)     judgments or awards which are uninsurable under the law pursuant to which this POLICY shall be construed.

(d)     DEFENSE COSTS means:

    (1)     fees charged by an attorney designated by the COMPANY to defend the INSURED; and

    (2)     all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a CLAIM if incurred by the COMPANY or by the INSURED with the prior written consent of the COMPANY.

DEFENSE COSTS does not include salary charges of officers and employees of the COMPANY or fees and expenses of supervisory counsel retained by the COMPANY.

(e)     INSURED means:

    (1)     the NAMED INSURED and any PREDECESSOR FIRM;

    (2)     any person or professional corporation who is or becomes a partner, officer, director or employee of the NAMED INSURED but solely while performing PROFESSIONAL SERVICES in connection with the NAMED INSURED'S practice of law;

    (3)     any person or professional corporation who was a partner, officer, director or employee of the NAMED INSURED or a PREDECESSOR FIRM but solely while performing PROFESSIONAL SERVICES in connection with the NAMED INSURED'S or PREDECESSOR FIRM'S practice of law;

    (4)     any person or professional corporation designated "of counsel" to the NAMED INSURED but solely while performing PROFESSIONAL SERVICES in connection with the NAMED INSURED'S practice of law;

    (5)     the heirs, executors, administrators and legal representatives of each INSURED in the event of death, incapacity or bankruptcy, but solely with respect to the liability of each INSURED as otherwise covered by this POLICY.

(f)     NAMED INSURED means the person or organization named in Item 1 of the Declarations.

(g)     POLICY means this insurance policy. The POLICY includes the Declarations, the application and any forms or endorsements attached to and made a part of this insurance policy.

(h)     POLICY PERIOD means the period from the effective date of this POLICY to the expiration date as set forth in Item 3 of the Declarations or its earlier termination date, if any.

(i)     PREDECESSOR FIRM means a law firm to whose financial assets and liabilities the NAMED INSURED became the majority successor in interest before the effective date of this POLICY.

(j)     PROFESSIONAL SERVICES means services rendered by the INSURED as:

    (1)     a lawyer or notary public; or

    (2)     an administrator, conservator, executor, receiver, guardian or trustee, or in any similar fiduciary capacity, provided such services are rendered in connection with the NAMED INSURED'S or PREDECESSOR FIRM'S practice of law.

(k)     RETROACTIVE DATE means the date specified in Item 7 of the Declarations.

Case Number: PC-2018-3654
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

## 4. Exclusions

This POLICY does not apply to:

(a)    any CLAIM arising out of an act, error or omission of an INSURED committed:

    (1)    before the RETROACTIVE DATE; or

    (2)    after the RETROACTIVE DATE and before the effective date of this POLICY if, before the effective date of this POLICY, any INSURED knew or could reasonably foresee that such act, error or omission might be the basis for a CLAIM;

(b)    any CLAIM arising out of a dishonest, criminal, malicious or deliberately fraudulent act or omission of an INSURED;

(c)    any CLAIM arising out of bodily injury, sickness, disease or death of any person or injury to or destruction of any tangible property including loss of use of such property;

(d)    any CLAIM made by or in the right of an INSURED against another INSURED, unless such CLAIM arises out of PROFESSIONAL SERVICES for that INSURED in a lawyer-client relationship;

(e)    any CLAIM made by, against or arising out of the conduct of any organization (other than the NAMED INSURED or a PREDECESSOR FIRM) which is owned, controlled, managed or operated by an INSURED or in which an INSURED is a partner or employee;

(f)    any CLAIM arising out of an INSURED'S activities and/or capacity as:

    (1)    an officer, director, partner, trustee, member or employee of any organization (other than the NAMED INSURED or a PREDECESSOR FIRM);

    (2)    a public official or employee of a governmental body, subdivision or agency;

    (3)    a fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto, except if an INSURED is deemed to be a fiduciary solely by reason of legal advice rendered with respect to an employee benefit plan;

(g)    any CLAIM made against an INSURED as a beneficiary or distributee of any trust or estate;

(h)    any CLAIM arising out of the certification or acknowledgement by an INSURED, in the INSURED'S capacity as a notary public, of a signature on a document which the INSURED did not witness being placed on the document;

(i)    any CLAIM made against an INSURED outside of the United States of America, its territories or possessions, or Canada.

## 5.  Limit of Insurance and Deductible

The limit of insurance stated in Item 4 of the Declarations is the maximum amount which the COMPANY shall pay for the sum of DAMAGES and DEFENSE COSTS as a result of all CLAIMS to which this Policy applies, regardless of the number of INSUREDS or claimants.

The COMPANY'S obligation to pay DAMAGES and/or DEFENSE COSTS with respect to any CLAIM applies in excess of the deductible stated in Item 5 of the Declarations.  The INSURED shall pay all DAMAGES AND DEFENSE COSTS up to the amount of the deductible.  The deductible applies separately to each CLAIM.

If for any reason the COMPANY shall pay any DAMAGES or DEFENSE COSTS within the deductible, the INSURED shall promptly reimburse the COMPANY for such amounts.

Case Number: PC-2018-6041
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

## 6. Multiple Insureds, Claims and Claimants

The inclusion of more than one INSURED in any CLAIM or the making of CLAIMS by more than one person or organization shall not operate to increase the deductible or the limit of insurance.

All CLAIMS arising out of the same act, error or omission or series of related acts, errors or omissions shall be considered one CLAIM and deemed to have been first made at the time the first of those CLAIMS is made against the INSURED.

## 7. Notice of Acts, Errors or Omissions

If, during the POLICY PERIOD, the INSURED first becomes aware of an act, error or omission that could reasonably be the basis for a CLAIM and gives written notice to the COMPANY during the POLICY PERIOD of:

(a)     the specific act, error or omission;

(b)     the identity of the potential claimants;

(c)     the injury or damage which may result or has resulted from the act, error or omission; and

(d)     the circumstances by which the INSURED first became aware of the act, error or omission,

any subsequent CLAIM made against the INSURED arising out of such act, error or omission shall be deemed to have been first made at the time the written notice was given to the COMPANY no matter when thereafter CLAIM is actually made against the INSURED.

## 8. Change in Status

If there is a change in status in which the NAMED INSURED is:

(a)     dissolved;

(b)     acquired by another law firm; or

(c)     merged into, or consolidated with, another law firm and the NAMED INSURED is not the surviving entity,

this POLICY shall end on the date the change in status takes place, and the NAMED INSURED shall have the right to purchase an Extended Reporting Period in accordance with section 10 of this POLICY.

The NAMED INSURED must notify the COMPANY in writing when a change in status takes place whether or not the NAMED INSURED elects to purchase the Extended Reporting Period. If a change in status takes place, the NAMED INSURED shall receive a refund from the COMPANY for the pro-rated, unearned premium.

## 9. Named Insured as Successor

This POLICY does not cover any law firm to whose financial assets and liabilities the NAMED INSURED becomes the majority successor in interest on or after the effective date of this POLICY, unless the COMPANY agrees to cover such law firm and the NAMED INSURED accepts any POLICY changes and/or additional premium as may be required by the COMPANY.

Case Number: PC-2018-8014
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1878614
Reviewer: Lynn G.

## 10. Extended Reporting Period

The NAMED INSURED shall have the option to purchase an Extended Reporting Period for certain CLAIMS made against the INSURED after the end of the POLICY PERIOD if:

(a)     a change in the status takes place as described in section 8 of this POLICY; or

(b)     the COMPANY cancels or refuses to renew this POLICY for reasons other than non-payment of the premium and/or deductible or non-compliance with the provisions of this POLICY.

The Extended Reporting Period, if purchased, shall become effective at the end of the POLICY PERIOD and last for twelve (12) calendar months.  The Extended Reporting Period shall apply to CLAIMS which are first made against the INSURED during the Extended Reporting Period and reported in writing to the COMPANY during the Extended Reporting Period or within thirty (30) days after the end of the Extended Reporting Period and which arise out of acts, errors or omissions of the INSURED committed between the RETROACTIVE DATE and the end of the POLICY PERIOD.

The additional premium for the Extended Reporting Period shall be equal to 100% of the full annual premium for this POLICY. The additional premium shall be fully earned and non-refundable once the Extended Reporting Period takes effect.

The option to purchase the Extended Reporting Period shall lapse if the NAMED INSURED does not request the Extended Reporting Period from the COMPANY in writing and pay the additional premium to the COMPANY within ten (10) days after the end of the POLICY PERIOD.  The COMPANY shall issue a written endorsement to this POLICY to document the Extended Reporting Period.

The Extended Reporting Period shall not reinstate or increase the limit of insurance or extend the POLICY PERIOD nor shall it waive any of the provisions of the POLICY.

## 11. Application

By accepting this POLICY, the INSURED affirms that the statements made and the information furnished to the COMPANY in the application, which is attached to and made a part of this policy, are the INSURED'S true and accurate representations. These representations have been relied upon by the COMPANY in, and are material to, the issuance of this POLICY.

## 12.  Claim Procedures

All CLAIMS reported to the COMPANY in accordance with the provisions of this POLICY shall include the name and address of the claimant and information concerning the time, place and nature of the alleged act, error or omission.

The INSURED shall immediately send the COMPANY copies of all demands, notices, summonses and legal papers which the INSURED receives in connection with any CLAIM.

The INSURED shall cooperate with the COMPANY in the investigation, defense and settlement of any CLAIM and shall assist the COMPANY in enforcing any right of contribution or indemnity against any person or organization who may be liable to the INSURED.

The INSURED shall not make any payment, admit liability, offer or agree to any settlement, assume any obligation, agree to arbitration or any similar means of resolution, or incur any expense in connection with any CLAIM without the COMPANY'S prior written consent.

Case Number: PC-2018-0014
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

## 13. Other Insurance

This POLICY applies in excess of any other valid and collectible insurance available to the INSURED, unless such other insurance is written only as specific excess insurance over the limit of insurance of this POLICY. This POLICY shall not be construed as being subject to the provisions of any other insurance.

## 14. Rights of Recovery

If the INSURED has rights against any other person or organization to recover all or part of any payment the COMPANY has made under this POLICY, those rights are transferred to the COMPANY. The INSURED must do nothing to impair those rights. At the COMPANY'S request the INSURED shall bring suit or transfer those rights to the COMPANY and assist the COMPANY in enforcing them.

## 15. Legal Action Limitation

The INSURED may not bring a legal action against the COMPANY concerning this POLICY until:

(a)     the INSURED has fully complied with all of the provisions of this POLICY; and

(b)     the amount of the INSURED'S obligation to pay has been decided by judgment against the INSURED after actual trial or by written agreement between the INSURED, the COMPANY and the claimant.

Any person, organization or their legal representative is entitled to recover under this POLICY after they have secured a judgment or written agreement. Recovery is limited to the extent of the insurance afforded by this POLICY. No person or organization has any right under this POLICY to include the COMPANY in any action against the INSURED to determine the INSURED'S liability nor will the COMPANY be brought into such an action by the INSURED or the INSURED'S representative.

## 16. Bankruptcy

Bankruptcy or insolvency of the INSURED or of the INSURED's estate shall not relieve the COMPANY of any of its obligations under this POLICY.

## 17. Premium

The NAMED INSURED shall pay when due the premium stated in Item 6 of the Declarations and any additional premiums which may be charged by the COMPANY because of any changes to this POLICY.

## 18. Changes

This POLICY contains all of the agreements between the INSURED and the COMPANY relating to the insurance afforded. None of the provisions of this POLICY can be waived, changed or modified except by written endorsement issued by the COMPANY to form a part of this POLICY

## 19. Transfer of Interest

This POLICY cannot be transferred or assigned without the prior written consent of the COMPANY

## 20. Cancellation

The NAMED INSURED may cancel this POLICY by mailing or delivering to the COMPANY advance written notice of cancellation.

The COMPANY may cancel this POLICY by mailing or delivering to the NAMED INSURED at the last mailing address known to the COMPANY written notice of cancellation at least:

(a)     ten (10) days before the effective date of cancellation if the COMPANY cancels for non-payment of the premium or the deductible; or

(b)     thirty (30) days before the effective date of cancellation if the COMPANY cancels for any other reason.

Notice of cancellation will state the effective date of cancellation.  The POLICY PERIOD will end on that date.  If notice is mailed, proof of mailing will be sufficient proof of notice.

If the NAMED INSURED cancels, the COMPANY shall retain the customary short rate proportion of the premium.  If the COMPANY cancels, the return premium shall be computed prorata.  The COMPANY will make premium adjustment with the NAMED INSURED at the time the cancellation is effective or as soon as practicable after that time, but premium adjustment is not a condition of cancellation.

## 21. Authorization

The NAMED INSURED shall act on behalf of all INSUREDS with respect to the giving and receiving of any notices under this POLICY, the payment of any premiums and deductibles and the receiving of any return premiums which may become due under this POLICY.

## 22. Designated Agent

Chicago Underwriting Group, Inc. is the designated agent of the COMPANY on all matters pertaining to this POLICY.  Any notices or documents pertaining to this POLICY shall be deemed to have been mailed or delivered to the COMPANY when mailed or delivered to:

Chicago Underwriting Group, Inc.
191 North Wacker Drive, Suite 1000
Chicago, Illinois  60606

## 23. Headings

The descriptions in the headings and sub-headings of this POLICY are inserted solely for convenience and do not constitute any part of the provisions of this POLICY.

Case Number: 18-BC
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

# OLD REPUBLIC INSURANCE COMPANY

## RHODE ISLAND CANCELLATION AND NONRENEWAL

It is understood and agreed Section 20. Cancellation is deleted in its entirety and replaced with the following:

### 20. Cancellation and Nonrenewal

A. Cancellation

1. The NAMED INSURED shown in the Declarations may cancel this POLICY by giving, mailing or delivering advance written notice of cancellation to the COMPANY or to the COMPANY'S agent who issued this POLICY.

2. The COMPANY may cancel this POLICY by giving, mailing or delivering to the NAMED INSURED and agent, if any, written notice of cancellation at least:

   (a) 10 days before the effective date of cancellation if the COMPANY cancels for nonpayment of premium; or

   (b) 30 days before the effective date of cancellation if the COMPANY cancels for any other reason.

3. If this POLICY has been in effect for 60 days or more, or if this is a renewal of a POLICY the COMPANY issued, the COMPANY may cancel only for one or more of the following reasons:

   (a) Nonpayment of premium;

   (b) Fraud or material misrepresentation made by the NAMED INSURED or with the NAMED INSURED'S knowledge in obtaining this POLICY, continuing this POLICY, or in presenting a CLAIM under this POLICY;

   (c) Activities or omissions on the NAMED INSURED'S part which increase any hazard insured against, including a failure to comply with loss control recommendations;

   (d) Change in the risk which increases the risk of loss after insurance coverage has been issued or renewed, including but not limited to an increase in exposure due to regulation, legislation, or court decision;

   (e) Loss or decrease of the COMPANY'S reinsurance covering all or part of the risk or exposure covered by this POLICY;

   (f) Determination by the Commissioner of Insurance that the continuation of this POLICY would jeopardize the COMPANY'S solvency or would place the COMPANY in violation of the insurance laws of this state;

### ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. | Policy No. | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| 1 | ORPRO 35486 | | |

E1072-1RI (09/2004)

Case Number: PC-2018-5649
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 24 of 97 PageID #: 29

# OLD REPUBLIC INSURANCE COMPANY

    (g) Violation or breach by the NAMED INSURED of any POLICY terms and

    (h) Such other reasons as may be approved by the Commissioner of Insurance.

4.  The COMPANY will give, mail or deliver written notice to the NAMED INSURED at the last address known to the COMPANY, and to the agent, if any.

5.  If this POLICY is canceled, the COMPANY will send the NAMED INSURED any premium refund due. If the COMPANY cancels, the refund will be pro rata. If the NAMED INSURED cancels, the refund may be less than pro rata.

    However, if this POLICY is financed under a premium finance agreement and the COMPANY cancels at the request of the premium finance company upon default of the NAMED INSURED, the refund will be pro rata.

    The cancellation will be effective even if the COMPANY has not made or offered a refund.

6.  Notice of cancellation will state the effective date of cancellation. The POLICY PERIOD will end on that date. Proof of giving, mailing or delivering notice of cancellation will be sufficient proof of notice.

7.  The COMPANY will provide the NAMED INSURED with the reason or reasons for cancellation if:

    (a) The NAMED INSURED requests in writing a statement of the reasons for cancellation; and

    (b) The NAMED INSURED agrees in writing to hold the COMPANY harmless from liability for any:

        (1) Communication giving notice of, or specifying the reasons for, cancellation; or

        (2) Statement made in connection with an attempt to discover or verify the existence of conditions which would be a reason for cancellation as provided under paragraph A 3. above.

B.  **Nonrenewal**

1.  If the COMPANY elects not to renew this POLICY, the COMPANY will give, mail or deliver to the NAMED INSURED and agent, if any, written notice of nonrenewal at least 30 days before:

    (a) The expiration date of this POLICY; or

    (b) An anniversary date of this POLICY, if this POLICY is written for a term longer than one year or with no fixed expiration date.

2.  However, the COMPANY need not give, mail or deliver this notice if:

    (a) The COMPANY has offered to issue a renewal POLICY; or

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. 1 | Policy No. ORPRO 53405 | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| | | | |

E1072-1RI (09/2004)                                                                 Page 2 of 3

Case Number: PC-2018-5570
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

# OLD REPUBLIC INSURANCE COMPANY

(b) The NAMED INSURED has obtained, or has agreed in writing to obtain, replacement coverage.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No.<br>1 | Policy No.<br>ORPRO<br>38406 | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| | | | |

E1072-1RI (09/2004)                                                      Page 3 of 3

Case Number: PC-2018-5807
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

# OLD REPUBLIC INSURANCE COMPANY

## INNOCENT INSURED ENDORSEMENT

It is understood and agreed that paragraph (b) of Section 4, Exclusions, is deleted and replaced by the following:

(b)     any CLAIM arising out of a dishonest, criminal, malicious or deliberately fraudulent act or omission of an INSURED, if a judgement or other final adjudication establishes, or if such INSURED admits, that such act or omission was committed, or personally acquiesced in, by such INSURED, but this exclusion shall not apply to any INSURED who neither was adjudged nor has admitted to have committed or personally acquiesced in such act or omission;

### ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. | Policy No. | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| 2 | O3PRO 30195 | | |

E1020 (09/2004)

Case Number: 18-5846CV
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

# OLD REPUBLIC INSURANCE COMPANY

## CONTRACT LAWYER ENDORSEMENT

It is understood and agreed that paragraph (e) of Section 3, Definitions, is amended by the addition of the following:

**( 6 )**  any person or professional corporation who was, is or becomes a contract lawyer of the NAMED INSURED, but only with respect to PROFESSIONAL SERVICES rendered on behalf of the NAMED INSURED.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. | Policy No. | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| 2 | ORPRO 25-105 | | |

E1021 (09/2004)

Case Number: PC-2018-5584
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

# OLD REPUBLIC INSURANCE COMPANY

## ARBITRATOR OR MEDIATOR ENDORSEMENT

It is understood and agreed that paragraph ( j ) of Section **3**, Definitions, is amended by the addition of the following:

(3)       an arbitrator or mediator

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. 4 | Policy No. ORPRO 56400 | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| | | | |

E1023 (09/2004)                                                                                   Page 1 of 1

Case Number: SC-2018-0009
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

# OLD REPUBLIC INSURANCE COMPANY

## OPTIONAL EXTENDED REPORTING PERIOD ENDORSEMENT (BILATERAL)

It is understood and agreed that Section 10. of this POLICY is deleted and replaced by the following:

### 10.   Extended Reporting Period

The NAMED INSURED shall have the option to purchase an Extended Reporting Period for certain CLAIMS made against the INSURED after the end of the POLICY PERIOD if:

(a)   a change in status takes place as described in Section 8. of this POLICY; or

(b)   this POLICY is canceled or not renewed for any reason other than non-payment of premium and/or deductible, or non-compliance with the provisions of this POLICY.

The Extended Reporting Period, if purchased, shall become effective at the end of the POLICY PERIOD and last for: (a) 12 calendar months, (b) 24 calendar months or (c) 36 calendar months, as elected by the NAMED INSURED.  The Extended Reporting Period shall apply to CLAIMS first made against the INSURED during the Extended Reporting Period and which are reported in writing to the COMPANY during the Extended Reporting Period or within 30 days after the end of the Extended Reporting Period, but only with respect to acts, errors or omissions of the INSURED committed between the RETROACTIVE DATE and the end of the POLICY PERIOD.

The additional premium for the Extended Reporting Period shall be calculated at the following percentages of the full annual premium for this POLICY: (a) 100% for 12 calendar months, (b) 185% for 24 calendar months and (c) 225% for 36 calendar months.  The additional premium shall be deemed fully earned and non-refundable once the Extended Reporting Period becomes effective.

The option to purchase the Extended Reporting Period shall lapse if the NAMED INSURED does not request the Extended Reporting Period from the COMPANY in writing and pay the additional premium to the COMPANY within 10 days after the end of the POLICY PERIOD.  The COMPANY shall issue a written endorsement to this POLICY to document the purchase of the Extended Reporting Period.

The Extended Reporting Period, if purchased, shall not operate to increase or reinstate the limit of insurance or extend the POLICY PERIOD or waive any other provisions of the POLICY.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. | Policy No. | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| 1 | ORPRO 33765 | | |

E1029 (09/2004)                                                                                                    Page 1 of 1

Case Number: PC-2018-6001
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

# OLD REPUBLIC INSURANCE COMPANY

## MUTUAL CHOICE OF DEFENSE COUNSEL ENDORSEMENT

It is understood and agreed that Section 2 of the POLICY is deleted and replaced by the following:

### 2. Defense and Settlement of Claims

The COMPANY shall have the right and the duty to defend any CLAIM seeking DAMAGES to which this POLICY applies even if any allegations of the CLAIM are groundless, false or fraudulent. The INSURED and the COMPANY shall mutually agree upon the selection of defense counsel to conduct the defense of any CLAIM.

The COMPANY may investigate any CLAIM as it deems necessary, but the COMPANY shall not settle any CLAIM without the INSURED'S consent. If, however, the INSURED refuses to consent to a settlement recommended by the COMPANY, and acceptable to the claimant, then the COMPANY'S total liability for such CLAIM shall not exceed the amount for which the CLAIM could have been settled plus the DEFENSE COSTS incurred up to the time of such refusal, or the applicable limit of insurance, whichever is less.

The COMPANY shall not be obligated to defend or continue to defend any CLAIM after the applicable limit of insurance has been deposited with a court or exhausted by the payment of DAMAGES and/or DEFENSE COSTS.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. | Policy No. | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| 6 | ORJ-RO 36 365 | | |

E1030 (09/2004)

Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

# OLD REPUBLIC INSURANCE COMPANY

## SPOUSAL EXTENSION

It is understood and agreed that:

A.  If a CLAIM made against an INSURED individual, includes a CLAIM against the INSURED'S lawful spouse solely by reason of (1) such spouse's status as a spouse of the INSURED, or (2) such spouse's ownership interest in property in which the claimant seeks as recovery for the act, error or omission of the INSURED, all loss which such spouse becomes legally obligated to pay on account of such CLAIM shall be treated for purposes of this POLICY as DAMAGES which the INSURED is legally obligated to pay on account of the CLAIM made against the INSURED.  Such spousal loss shall be covered under this POLICY only if and to the extent that such loss would be covered if incurred by the INSURED.

B.  The coverage extension afforded by this Endorsement does not apply to any CLAIM alleging any act, error or omission by an INSURED'S spouse.  The term "spouse" as used in this paragraph shall include any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law in the United States of America.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. | Policy No. | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| 7 | ORPRO NI408 | | |

E1097 (06/2007)

Case Number: PC-2018-5601
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

# OLD REPUBLIC INSURANCE COMPANY

## SECTION 12. - AMENDMENT

It is understood and agreed that **Section 12. Claim Procedures** is amended by the addition of the following:

The INSURED shall, as a condition precedent to their rights under this POLICY, give to the COMPANY written notice of any CLAIM made against the INSURED as soon as practicable but in no event later than (1) 60 days after the expiration of the POLICY PERIOD, if the Extended Reporting Period is not exercised, or (2) expiration of the Extended Reporting Period, if exercised.

All notices under any provision of this POLICY shall be in writing and given by prepaid express courier, e-mail, facsimile or certified mail properly addressed to the appropriate party. Notice to the COMPANY of any CLAIM or potential CLAIM shall be given to Old Republic Professional Liability, Inc., 191 North Wacker Drive, Suite 1000, Chicago, Illinois 60606, Attention: Claims Department (fax number is: 312-750-8965 and e-mail address is: ClaimNotice@oldrepublicpro.com). All other notices to the COMPANY under this POLICY shall be given to the COMPANY at the same address but to the attention of the Underwriting Department. Notice given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee or one day following the date such notice is sent, whichever is earlier, subject to the proof of transmittal.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. R | Policy No. ORPRO 40565 | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| | | | |

E1098 (07/2016)                                                                 Page 1 of 1

Case Number: PC-2018-4017
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

# OLD REPUBLIC INSURANCE COMPANY

### SECTION 22. – AMENDMENT

It is understood and agreed that section 22. **Designated Agent**, is replaced in its entirety by the following:

### 22. Designated Representative

Old Republic Professional Liability, Inc. is the designated representative of the COMPANY on all matters pertaining to this POLICY. Any notices or documents pertaining to this POLICY shall be deemed to have been mailed or delivered to the COMPANY when mailed or delivered to:

Old Republic Professional Liability, Inc.
191 N. Wacker Drive, Suite 1000
Chicago, Illinois 60606

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. 6 | Policy No. ORPRO 35665 | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| | | | |

E1100 (07/2016)

Case Number: PC-2018-6010
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

# OLD REPUBLIC INSURANCE COMPANY

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

1.  **This policy does not apply:**

    A.  Under any Liability Coverage, to bodily injury or property damage

    (1) with respect to which an Insured under this policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B.  Under any Medical Payments Coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

    C.  Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties nuclear material, if:

    (1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

    (2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

    (3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

2.  **As used in this endorsement:**

    "hazardous properties" include radioactive, toxic or explosive properties;

    "nuclear material" means source material, special nuclear material or by-product material;

### ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. 10 | Policy No. ORPRO 00125 | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
|  |  |  |  |

E5000 (08/2004)                                                                 Page 1 of 2

Case Number: PC-2018-00506
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

# OLD REPUBLIC INSURANCE COMPANY

"source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or devise designed or used for (i)  separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal or waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. 10 | Policy No. ORFRO 3E465 | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| | | | |

E5000 (09/2004)

Case Number: PC-2018-6019
Filed in Providence/Bristol County Superior Court
Submitted: 8/21/2018 3:51 PM
Envelope: 1678614
Reviewer: Lynn G.

# EXHIBIT B

Case Number: PC-2018-8931
Filed in Providence/Bristol County Superior Court
Submitted: 8/28/2018 3:17:59 AM
Envelope: 1658628
Reviewer: Darci O.

CASE 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 37 of 97 PageID #: 42

STATE OF RHODE ISLAND                           SUPERIOR COURT
PROVIDENCE, SC.

RICHARD L. GEMMA, as          :
Receiver for BR Asset         :
Management, LLC f/k/a         :
Benrus, LLC                   :
    Plaintiff            :
               :
    v.                   :          C.A. No.:
               :
MICHAEL F. SWEENEY,           :
DUFFY & SWEENEY, LTD.,        :
PALMLAKE GROUP, LLC,          :
JOHN DOE 1 & 2, and JANE      :
DOE 1 & 2                     :
    Defendants           :          **JURY TRIAL CLAIMED**

## COMPLAINT

### Parties and Jurisdiction

1.    Plaintiff Richard L. Gemma is Permanent Receiver (the "Receiver"),

appointed January 2, 2018 by the Providence County Superior Court, of BR Asset

Management, LLC f/k/a Benrus, LLC ("BRAM f/k/a Benrus"), a Delaware company with

its primary place of business in Rhode Island.

2.    Defendant Michael F. Sweeney ("Sweeney") resides in Providence, Rhode

Island and, at all times relevant hereto, was (and is) a member of the Rhode Island Bar,

holding himself out as "a savvy deal-maker and negotiator," the president and co-

founding shareholder of Defendant Duffy & Sweeney, Ltd., and a member and the

manager of Defendant PalmLake Group, LLC, with the title of manager.

3.    Defendant Duffy & Sweeney, Ltd. ("D&S") is a Rhode Island professional

service corporation engaged in the practice of law and holding itself out as providing

"practical and seasoned advice and guidance on issues facing businesses today," and

Case Number: PC-2018-6831
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 10:17:59 AM
Envelope: 1658628
Reviewer: Carol M.

CASE 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 38 of 97 PageID #: 43

having a principal place of business located at One Financial Plaza, Suite 1800, Providence, Rhode Island 02903.

4.      Defendant PalmLake Group, LLC ("PalmLake") is a Florida limited liability company having a purported principal place of business located at 11413 Pink Oleander Lane, Palm Beach Gardens, Florida 33418, Defendant Michael F. Sweeney and his wife Leslie Sweeney's vacation home, with sufficient minimum contacts to subject itself to the jurisdiction of Rhode Island, and which has expressly agreed to the jurisdiction of this Court.

5.      Defendants John Doe 1 & 2 and Jane Doe 1 & 2, whose identities are presently unknown to Plaintiff, are members of Defendant PalmLake, and are hereby named as party defendants pursuant to R.I.G.L. § 9-5-20.

6.      The amount in controversy meets the jurisdictional threshold of this Court.

## Facts

7.      At all relevant times hereto, BRAM f/k/a Benrus was in the business of designing, branding, marketing, and/or selling consumer products, including watches and backpacks, manufactured by others.

8.      In or around 2014, BRAM f/k/a Benrus, engaged Defendants Sweeney and D&S to provide it legal counsel and representation.

9.      At all relevant times hereto, Defendants Sweeney and D&S provided legal counsel and representation to BRAM f/k/a Benrus.

10.     At all relevant times hereto, Defendants Sweeney and D&S knew that BRAM f/k/a Benrus was in need of funding to pay for its production and shipping costs.

2

Case Number: PC-2018-8815
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 10:17:59 AM
Envelope: 1658620
Reviewer: Danielle M.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 39 of 97 PageID #: 44

11.    In or around April 2016, and as a result of that knowledge, Defendants Sweeney and D&S began negotiating a financing transaction with BRAM f/k/a Benrus.

12.    Defendants Sweeney and John Doe 1 & 2 and Jane Doe 1 & 2 formed Defendant PalmLake for the purpose of entering into a financing transaction with BRAM f/k/a Benrus.

13.    At all relevant times hereto, Defendant Sweeney was a principal and agent of Defendant PalmLake.

14.    At all relevant times hereto, Defendant D&S was an agent of Defendant PalmLake.

15.    At all relevant times hereto, Defendants John/Jane Doe 1 & 2 were members and/or agents of Defendant PalmLake.

16.    By April 20, 2016, BRAM f/k/a Benrus was projecting $1 million in sales of backpacks but did not have the necessary funds to pay for the production costs relating to these sales. See Emails of April 20, 2016, attached hereto as *Exhibit 1* at 3-4.

17.    By April 20, 2016, Defendants Sweeney and D&S and BRAM f/k/a Benrus had reached an agreement in principle for what they understood to be a bridge loan to enable the production of the backpacks. See *Exhibit 1* at 3.

18.    On April 21, 2016, Defendant Sweeney advised BRAM f/k/a Benrus that Jean Harrington, an attorney employed by Defendant D&S, would prepare "simple loan/security" documents for "the bridge loan for the backpacks." See Emails of April 21, 2016, attached hereto as *Exhibit 2* at 1.

19.    On April 22, 2016, Defendant Sweeney signed and submitted to the Florida Secretary of State Defendant PalmLake's Articles of Organization, including

3

Case Number: PC-2018-8535
Filed in Providence/Bristol County Superior Court
Submitted: 5/25/2018 3:51:50 AM
Envelope: 1558620
Reviewer: Carol M.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 40 of 97 PageID #: 45

Article IV, which identified "[t]he name and address of the person(s) authorized to manage LLC" as follows:

> Title: MGR
> MICHAEL F SWEENEY ESQ.
> ONE FINANCIAL PLAZA, SUITE 1800
> PROVIDENCE, RI 02903 US.

20.     On April 23, 2016, Defendant PalmLake entered into a financing agreement, signed by Defendant Sweeney, with BRAM f/k/a Benrus, in the form of a "Purchase Order Purchase Agreement" (the "Agreement"), incorporated herein, and attached hereto as *Exhibit 3*.

21.     The Agreement was negotiated and drafted by Defendants Sweeney and D&S on behalf of Defendant PalmLake and all parties.

22.     At no relevant time did Defendants Sweeney or D&S (or anyone else) ever comply with Rule 1.8 of the Rhode Island Rules of Professional Conduct and:

    a.     advise BRAM f/k/a Benrus in writing of the desirability of seeking, and give it a reasonable opportunity to seek, the advice of independent legal counsel on the financing transaction; or

    b.     obtain BRAM f/k/a Benrus's informed consent, in a signed writing, to the essential terms of the transaction and Defendants Sweeney and D&S's role in the transaction, including whether Defendants Sweeney and D&S were representing BRAM f/k/a Benrus on the financing transaction.

23.     Defendants Sweeney and D&S included in the Agreement the following so-called "governing law" provision:

4

> **Governing Law.** This agreement and all transactions contemplated hereby shall be governed by, construed and enforced in accordance with the laws of the State of Florida, exclusive of its choice of law rules. THE PARTIES HEREIN WAIVE TRIAL BY JURY AND AGREE TO SUBMIT TO THE PERSONAL JURISDICTION AND VENUE OF A COURT OF SUBJECT MATTER JURISDICTION LOCATED IN RHODE ISLAND. In addition to any other relief to which [Defendant PalmLake] may be entitled, BENRUS agrees to reimburse [Defendant PalmLake] for [Defendant PalmLake's] reasonable attorney's fees, court costs, and all other expenses, whether or not taxable by the court as costs, incurred in enforcing its rights under this Agreement, including, without limitation, in enforcing the security interest granted herein and/or preserving the collateral subject thereto.

*Exhibit 3* at ¶19(d).  (Original Emphasis.)

24.     Defendants Sweeney and D&S included the above Florida choice of law and waiver of jury trial language in an attempt to evade Rhode Island law, § 6-26-1 et seq., and to deprive BRAM f/k/a Benrus of its right to a jury trial.

25.     That same day, April 23, 2016, Defendant PalmLake advanced the first funds under the terms of the Agreement.

26.     On or about May 20, 2016, Defendant PalmLake entered into an addendum to the Agreement, signed by Defendant Sweeney, with BRAM f/k/a Benrus, in the form of an "Addendum to Purchase Order Purchase Agreement" (the "First Addendum"), incorporated herein, and attached hereto as *Exhibit 4*.

27.     The First Addendum was negotiated and drafted by Defendants Sweeney and D&S on behalf of Defendant PalmLake and all parties.

28.     At no relevant time did Defendants Sweeney or D&S (or anyone else) ever comply with Rule 1.8 of the Rhode Island Rules of Professional Conduct and:

a.   advise BRAM f/k/a Benrus in writing of the desirability of seeking,
and give it a reasonable opportunity to seek, the advice of
independent legal counsel on the First Addendum transaction; or

b.   obtain BRAM f/k/a Benrus's informed consent, in a signed writing,
to the essential terms of the transaction and Defendants Sweeney
and D&S's role in the transaction, including whether Defendants
Sweeney and D&S were representing BRAM f/k/a Benrus on the
First Addendum transaction.

29.   On or about June 28, 2016, Defendant PalmLake entered into a second
addendum, signed by Defendant Sweeney, with BRAM f/k/a Benrus, in the form of a
"Second Addendum to Purchase Order Purchase Agreement" (the "Second
Addendum"), incorporated herein, and attached hereto as *Exhibit 5*.

30.   The Second Addendum was negotiated and drafted by Defendants
Sweeney and D&S on behalf of Defendant PalmLake and all parties.

31.   At no relevant time did Defendants Sweeney or D&S (or anyone else) ever
comply with Rule 1.8 of the Rhode Island Rules of Professional Conduct and:

a.   advise BRAM f/k/a Benrus in writing of the desirability of seeking,
and give it a reasonable opportunity to seek, the advice of
independent legal counsel on the Second Addendum transaction;
or

b.   obtain BRAM f/k/a Benrus's informed consent, in a signed writing,
to the essential terms of the transaction and Defendants Sweeney
and D&S's role in the transaction, including whether Defendants

Case Number: BC-2018-5634
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 10:17:50 AM
Envelope: 1656620
Reviewer: Carol M.

Sweeney and D&S were representing BRAM f/k/a Benrus on the

Second Addendum transaction.

32.     Pursuant to the Agreement, First Addendum, and Second Addendum

(together, the "Financing Agreements"):

a.      Defendant PalmLake advanced $499,621.14 on BRAM f/k/a

Benrus's behalf, to fund the cost of a production order for

backpacks. *Exhibit 3* at ¶2;

b.      Defendant PalmLake advanced $22,500.00 on BRAM f/k/a

Benrus's behalf, to fund the cost of a production order for watches.

*Exhibit 4* at ¶1;

c.      Defendant PalmLake advanced $77,553.00 on BRAM f/k/a

Benrus's behalf, to fund the cost of shipping fees and duties.

*Exhibit 5* at ¶1.

d.      Defendant PalmLake advanced a total of $599,674.14 in funds on

BRAM f/k/a Benrus's behalf. *Exhibit 5* at ¶1.

e.      In exchange for advancing the above funds, Defendant PalmLake

charged BRAM f/k/a Benrus a so-called "fee" of "15% of the

advances," *Exhibit 3* at ¶4, for a "total fee amount" of $89,951.12.

*Exhibit 5* at ¶2.

f.      BRAM f/k/a Benrus's so-called "total Payment Obligation," the total

funds advanced plus the 15% so-called "fee," owed to Defendant

PalmLake was $689,625.26. *Exhibit 5* at ¶2.

Case Number: PC-2018-5935
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 3:17:50 AM
Envelope: 1658620
Reviewer: Carol O.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 44 of 97 PageID #: 49

g.      BRAM f/k/a Benrus owed Defendant PalmLake $689,625.26 within

ninety (90) days of Defendant PalmLake's total advance of funds,

**at an effective interest rate in excess of 60% per annum**

**interest.** *Exhibit 3* at ¶5(j); *Exhibit 5* at ¶3.

h.      In the event of default, in addition to the above effective interest,

Defendant PalmLake was also to be owed an additional 3.5%

interest, for each 30-day period, on any outstanding debt (funds

advanced plus interest) **at an additional effective interest rate in**

**excess of 42% per annum (not including the above effective**

**per annum interest).** *Exhibit 3* at ¶14(h).

33.     The total amount advanced by Defendant PalmLake between April 23,

2016 and June 28, 2016, on behalf of BRAM f/k/a Benrus, was $599,674.14. See

Defendant PalmLake's Loan Calculations, incorporated herein, and attached hereto as

*Exhibit 6*.

34.     The total amount repaid by BRAM f/k/a Benrus between August 11, 2016

and November 15, 2016 to Defendant PalmLake was $689,625.26.  See *Exhibit 6*.

## COUNT I – USURY UNDER RHODE ISLAND LAW

### (ALL DEFENDANTS)

35.     Plaintiff re-states and incorporates by reference herein the facts and

allegations contained in paragraphs 1-34 as if fully set forth herein.

36.     Defendant Sweeney organized Defendant PalmLake in the state of Florida

for the purpose of evading Rhode Island's Interest and Usury laws, § 6-26-1 et seq.

Case Number: PC-2018-5917
Filed in Providence/Bristol County Superior Court
Submitted: 6/25/2018 3:17:59 AM
Envelope: 1588628
Reviewer: Carol M.

37.     Defendants Sweeney and D&S included the Florida choice of law provisions in the Financing Agreements in an attempt to evade Rhode Island's Interest and Usury laws, § 6-26-1 et seq., for the benefit of all Defendants.

38.     Defendants Sweeney and D&S included the Florida choice of law provisions in the Financing Agreements for the purpose of evading Rhode Island's Interest and Usury laws, § 6-26-1 et seq., to the detriment of Defendants Sweeney and D&S's client, BRAM f/k/a Benrus.

39.     In violation of Rule 1.8 of the Rhode Island Rules of Professional Conduct, Defendants Sweeney and D&S included the Florida choice of law provisions in the Financing Agreements, without first:

    a.     advising BRAM f/k/a Benrus in writing of the desirability of seeking, and giving it a reasonable opportunity to seek, the advice of independent legal counsel on the Financing Agreement transactions; or

    b.     obtaining BRAM f/k/a Benrus's informed consent, in a signed writing, to the essential terms of the transaction and Defendant Sweeney's and D&S's role in the transaction, including whether Defendant Sweeney and D&S was representing BRAM f/k/a Benrus on the Financing Agreement transactions.

40.     The Florida choice of law provision is not bona fide or enforceable because Defendant Sweeney organized Defendant PalmLake in Florida for the sole purpose of evading Rhode Island law.

9

Case Number: PC-2018-0037
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 3:51:53 AM
Envelope: 1658529
Reviewer: Carol M.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 46 of 97 PageID #: 51

41.     Based on all of the foregoing, justice requires that the Florida choice of law provisions in the Financing Agreements be struck, as well as the waiver of jury trial, and Rhode Island law should apply.

42.     Defendants Sweeney and D&S drafted and negotiated the Financing Agreements with BRAM f/k/a Benrus.

43.     Under the Financing Agreements, all Defendants reserved, charged, demanded, and took from BRAM f/k/a Benrus interest in excess of the maximum rate of interest in Rhode Island of 21% per annum, in violation of § 6-26-2.

44.     All Defendants acted in concert in (i) making the Financing Agreements; (ii) demanding payment on the Financing Agreements; and (iii) achieving receipt of funds in excess of the 21% per annum maximum interest rate, in violation of § 6-26-2.

45.     All Defendants willfully and knowingly violated § 6-26-2, and are guilty of criminal usury, pursuant to § 6-26-3, and liable to Plaintiff under § 9-1-2, and consequently are liable for punitive damages.

WHEREFORE, Plaintiff Richard L. Gemma, as Receiver for BRAM f/k/a Benrus, seeks an award of money damages in the amount of $689,625.26 against Defendants Sweeney, D&S, PalmLake, and John/Jane Doe 1 & 2, and each of them, jointly and severally, plus, interest, costs, attorney fees, punitive damages, and such further relief as this court deems just and reasonable.

Case Number: PC-2018-8635
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 3:17:59 AM
Envelope: 1658620
Reviewer: Darol G.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 47 of 97 PageID #: 52

## COUNT II – USURY UNDER FLORIDA LAW

### (ALL DEFENDANTS)

46.     Plaintiff re-states and incorporates by reference herein the facts and allegations contained in paragraphs 1-34 as if fully set forth herein.

47.     Defendants Sweeney, PalmLake, and John/Jane Doe 1 & 2 loaned money unlawfully to BRAM f/k/a Benrus and willfully and knowingly charged, took, and/or received interest thereon at a rate in excess of 25%, in violation of Florida's Criminal Usury, Loan Sharking statute, § 687.071(2).

48.     Defendants Sweeney, PalmLake, and John/Jane Doe 1 & 2 loaned money unlawfully to BRAM f/k/a Benrus and willfully and knowingly charged, took, and/or received interest thereon at a rate in excess of 45%, in violation of Florida's Criminal Usury, Loan Sharking statute, § 687.071(3).

49.     Defendants Sweeney, PalmLake, and John/Jane Doe 1 & 2 loaned money unlawfully to BRAM f/k/a Benrus and willfully and knowingly charged, took, and/or received excessive interest thereon, in violation of Florida's Usury statutes, § 687.01 et seq.

50.     Defendants Sweeney and D&S arranged an unlawful loan of money from Defendants Sweeney, PalmLake, and John/Jane Doe 1 & 2 to BRAM f/k/a Benrus, in violation of Florida's Criminal Usury, Loan Sharking statute, §§ 687.071(2) and 687.071(3).

51.     Defendants Sweeney and D&S advised and assisted BRAM f/k/a Benrus in obtaining an unlawful loan of money, in violation of Florida's Criminal Usury, Loan Sharking statute, §§ 687.071(2) and 687.071(3).

Case Number: PC-2018-4067
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 10:17:58 AM
Envelope: 1668628
Reviewer: Carol M.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 48 of 97 PageID #: 53

WHEREFORE, Plaintiff Richard L. Gemma, as Receiver for BRAM f/k/a Benrus,

seeks an award of $869,527.50 for (i) BRAM f/k/a Benrus's actual damages in the

amount of $689,625.26, pursuant to § 687.147, and (ii) double the interest taken from

BRAM f/k/a Benrus in the amount of $179,902.24, pursuant to § 687.04, against

Defendants Sweeney, D&S, PalmLake, and John/Jane Doe 1 & 2, and each of them,

jointly and severally, plus, interest, costs, attorney fees, punitive damages, and such

further relief as this court deems just and reasonable.

## COUNT III – RHODE ISAND RICO

## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

### (ALL DEFENDANTS)

52.     Plaintiff re-states and incorporates by reference herein the facts and

allegations contained in paragraphs 1-51 as if fully set forth herein.

53.     All Defendants collected or participated in the collection of an unlawful

debt from BRAM f/k/a Benrus, in the amount of $689,625.26, which was unenforceable

under both Rhode Island and Florida state laws, in violation of § 7-15-1 et seq.

54.     Defendants used or invested the income from the collection of an unlawful

debt from BRAM f/k/a Benrus in the operation of Defendants D&S and/or PalmLake, in

violation of § 7-15-2(a).

55.     All Defendants used or invested the income from the collection of an

unlawful debt from BRAM f/k/a Benrus to maintain an interest in and/or control

Defendants D&S and/or PalmLake, in violation of § 7-15-2(b).

Case Number: PC-2018-6061
Filed in Providence/Bristol County Superior Court
Submitted: 6/25/2018 10:17:59 AM
Envelope: 1658620
Reviewer: Carol M.

56.     Defendants Sweeney and John/Jane Doe 1 & 2 were associated with Defendants D&S and PalmLake through the collection of the unlawful debt from BRAM f/k/a Benrus, in violation of § 7-15-2(c).

WHEREFORE, Plaintiff Richard L. Gemma, as Receiver for BRAM f/k/a Benrus, seeks an award of treble damages in the amount of $2,068,875.70, pursuant to § 7-15-4, against Defendants Sweeney, D&S, PalmLake, and John/Jane Doe 1 & 2, and each of them, jointly and severally, plus, interest, costs, attorney fees, punitive damages, and such further relief as this court deems just and reasonable.

## COUNT IV – FLORIDA CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT

### Fla. Stat. Ann. § 772 et seq.

### (ALL DEFENDANTS)

57.     Plaintiff re-states and incorporates by reference herein the facts and allegations contained in paragraphs 1-34 and 46-51 as if fully set forth herein.

58.     Defendant Sweeney with criminal intent, received proceeds through the collection of unlawful debts from BRAM f/k/a Benrus, and used those proceeds in the maintenance and operation of Defendant D&S and/or PalmLake, in violation of § 772.103.

59.     All Defendants conducted or participated in the collection of unlawful debts from BRAM f/k/a Benrus, in violation of § 772.103(3).

60.     All Defendants conspired to collect the unlawful debts from BRAM f/k/a Benrus for the maintenance and operation of Defendant D&S and/or PalmLake, in violation of § 772.103(4).

13

Case Number: PC-2018-4289
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 3:51:29 AM
Envelope: 1658620
Reviewer: Carol G.

WHEREFORE, Plaintiff Richard L. Gemma, as Receiver for BRAM f/k/a Benrus, seeks an award of treble damages in the amount of $2,608,582.50, pursuant to § 772.104, against Defendants Sweeney, D&S, PalmLake, and John/Jane Doe 1 & 2, and each of them, jointly and severally, plus, interest, costs, attorney fees, and such further relief as this court deems just and reasonable.

<u>COUNT V – ESTOPPEL</u>

(ALL DEFENDANTS)

61.    Plaintiff re-states and incorporates by reference herein the facts and allegations contained in paragraphs 1-34 as if fully set forth herein.

62.    On April 20 and 21, 2016, in the course of negotiations with BRAM f/k/a Benrus at a time when Defendants Sweeney and D&S represented BRAM f/k/a Benrus, Defendants Sweeney and D&S affirmatively represented to BRAM f/k/a Benrus, that the financing transaction being negotiated was a "loan," a "bridge loan," and a "bridge loan for the backpacks," and that Defendant Sweeney "gave Jean [Harrington, a partner at Defendant D&S] the terms [he] can close and she will prepare simple loan/security docs so we could make first funds tomorrow or Monday." See *Exhibit 1* at 3; and *Exhibit 2* at 1.

63.    Defendants Sweeney and D&S represented to their otherwise unrepresented client, BRAM f/k/a Benrus, that the transaction was a loan.

64.    On April 23, 2016, Defendant PalmLake and BRAM f/k/a Benrus entered into the Agreement and Defendant PalmLake advanced "first funds" that day, in the amount of $149,886.34.

14

Case Number: PC-2018-8635
Filed in Providence/Bristol County Superior Court
Submitted: 8/28/2018 10:17:59 AM
Envelope: 1658628
Reviewer: Daniel M.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 51 of 97 PageID #: 56

65.   Once a claim was made that the transaction was usurious, Defendants Sweeney and PalmLake have tried to mischaracterize the arrangement as a factoring agreement.

66.   Such behavior by a lawyer dealing with an otherwise unrepresented client is a gross violation of ethical standards binding on lawyers who enter into business transactions with their own clients.

67.   All Defendants must be estopped from attempting to characterize the Financing Agreements as a factoring arrangement after advising their client that it was a loan.

68.   Defendants Sweeney and D&S were acting on behalf of all Defendants with regard to all aspects of the Financing Agreements.

69.   Plaintiff requests that all Defendants be estopped from claiming that the financing transaction was a factoring agreement.

WHEREFORE, Plaintiff Richard L. Gemma, as Receiver for BRAM f/k/a Benrus, demands equitable estoppel against all Defendants, estopping all Defendants from denying that the Financing Agreements entered into by Defendant PalmLake and BRAM f/k/a Benrus were loans.

Case Number: PC-1810909
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 10:17:59 AM
Envelope: 1558620
Reviewer: Carol G.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 52 of 97 PageID #: 57

Plaintiff,
Richard L. Gemma, as Receiver of BR Asset
Management, LLC formerly known as
BENRUS, LLC
By his Attorney,


/s/ Max Wistow
Max Wistow, Esq. (#0330)


/s/ Shad M. Miller
Shad M. Miller, Esq. (#8594)
Wistow, Sheehan & Loveley, PC
61 Weybosset Street
Providence, RI  02903
(401) 831-2700
(401) 272-9752 (fax)


Dated: May 25, 2018

Case Number: PC-2018-5604
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 10:17:59 AM
Envelope: 1688620
Reviewer: Carol G.

# EXHIBIT 1

Case Number: PC-2018-8835
Filed in Providence/Bristol County Superior Court
Submitted: 6/25/2018 30:17:58 AM
Envelope: 1558628
Reviewer: Danielle I.

Case 3:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 54 of 97 PageID #: 59

Wendy Smith

| | |
|---|---|
| From: | Giovanni Feroce <giovanni@benrus.com> |
| Sent: | Wednesday, April 20, 2016 12:44 PM |
| To: | Michael Sweeney |
| Cc: | Julie Kooloian |
| Subject: | Fwd: Back to School '16 Backpack Order |

Redacted

Mike
See answers from Rodrigo
Thank you
GF

Giovanni Feroce
Chairman and CEO

**B E N R U S**
39 Pike Street, Suite 3
Providence, RI 02903
www.BENRUS.com

"Remember that there is nothing stable in human affairs. Avoid, therefore, undue excitement in prosperity or undue despair in adversity" - Socrates (5th Century B.C.)

Begin forwarded message:

> From: Rodrigo Zetina <rodrigo@benrus.com>
> Date: April 20, 2016 at 12:37:23 PM EDT
> To: Giovanni Feroce <giovanni@benrus.com>
> Subject: RE: Back to School '16 Backpack Order

Giovanni,

The following would be the payment schedule to the factory in Vietnam and our receivables, assuming the funds are disbursed on Friday, April 22nd:

| Transaction | Amount | Date |
|---|---|---|
| 30% Initial Deposit | $ 149,886.34 | 22-Apr-16 |
| Balance Ex-Factory | $ 349,734.80 | 21-Jun-15 |
| Total Cost FOB | $ 499,621.14 | |



1

BH000019

Case Number: PC-2018-4916
Filed in Providence/Bristol County Superior Court
Submitted: 6/25/2018 3:51:58 AM
Envelope: 1638620
Reviewer: Carol M.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 55 of 97 PageID #: 60

If the product ships on June 21st, we will need to air ship the majority of the order to meet the start ship dates of the accounts:

| Units Shipping | Shipping Method | Date |
|---|---|---|
| 44,000 | Air Ship (LA)/Drop Ship | 15-Jun-16 |
| 6,000 | Ship (LA) | 15-Jun-16 |

Again, operating under the expected ex-factory date of June 21st, below would be the updated receivables schedule. The only pending portion would be the AAFES order that was cancelled.

| Receivables | Amount | Estimated Date |
|---|---|---|
| 1st Payment | $ 886,289.00 | 1-Sep-16 |
| 2nd Payment | $ 70,142.00 | 30-Sep-16 |
| 3rd Payment | $ 22,932.00 | 31-Dec-16 |
| Total | $ 979,363.00 | |

Please let me know if you need anything further.

Regards,
RZY

**Rodrigo Zetina-Yglesias**

**Director of Operations**



o. 401.632.4500

m. 401.612.5200

ri. 39 Pike St., Providence, RI 02903

w. www.BENRUS.com





This e-mail message may contain confidential or legally privileged information and is intended only for the use of the intended recipient(s). Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. E-mails are

BH000020

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 56 of 97 PageID #: 61

not secure and cannot be guaranteed to be error free as they can be intercepted, amended, or contain viruses. Anyone who communicates with us by e-mail is deemed to have accepted these risks. Company Name is not responsible for errors or omissions in this message and denies any responsibility for any damage arising from the use of e-mail. Any opinion and other statement contained in this message and any attachment are solely those of the author and do not necessarily represent those of the company.

**From:** Giovanni Feroce
**Sent:** Wednesday, April 20, 2016 11:46 AM
**To:** Rodrigo Zetina <rodrigo@benrus.com>
**Subject:** Fwd: Back to School '16 Backpack Order

Again, see below...answer what is relevent, I will answer loan questions.

Giovanni Feroce
Chairman and CEO

**B E N R U S**
401.572.9000
39 Pike Street
Providence, RI 02903
www.BENRUS.com

"Remember that there is nothing stable in human affairs. Avoid, therefore, undue excitement in prosperity or undue despair in adversity" - Socrates (5th Century B.C.)

Begin forwarded message:

> **From:** Michael Sweeney <msweeney@duffysweeney.com>
> **Date:** April 20, 2016 at 11:42:09 AM EDT
> **To:** Giovanni Feroce <giovanni@benrus.com>
> **Cc:** Julie Kooloian <julie@benrus.com>
> **Subject:** Re: Back to School '16 Backpack Order
>
> So – please lay out the exact funds flow - how much each week starting Friday that would go direct to manufacturer - to get you the product so you get the $1mm in sales.
>
> Is there air shipping now required for any?
>
> Investors would want to fund direct, and they would require payment of this bridge loan from out of the AR payment when collected (cannot collect and use for other ongoing expenses so it would be secured as this would be a lona) plus 20%?.
>
> If we close larger equity in next few months - then you out okay back and end this loan early to regain the flexibility you desire.
> Agree?
>
> On Apr 20, 2016, at 11:12 AM, Giovanni Feroce <giovanni@benrus.com> wrote:
>
>> Mike
>> Please see attached.  I am looking to fund a $1M receivable in backpack re-orders that require $499k to produce.

3

BH000021

This order needs to start this week. The AAFES order is the only one that we cannot ship on time out of this batch, and it will be sold to TJ Maxx as a back up. The remaining orders we will have time to fulfill if we can get a deal done ASAP.

I am open to negotiating terms, please coordinate a call if you have a source.

Thank you
GF

Giovanni Feroce
Chairman and CEO

**BENRUS**
401.572.9000
39 Pike Street
Providence, RI 02903
www.BENRUS.com

"Remember that there is nothing stable in human affairs. Avoid, therefore, undue excitement in prosperity or undue despair in adversity" - Socrates (5th Century B.C.)

Begin forwarded message:

> From: Rodrigo Zetina <rodrigo@benrus.com>
> Date: April 4, 2016 at 7:34:13 PM EDT
> To: Giovanni Feroce <giovanni@benrus.com>
> Subject: Back to School '16 Backpack Order
>
> Giovanni,
>
> As requested, please find all the confirmed sales orders for the BTS '16 backpacks. Further, I'm attaching PO 1006 –this is the final order that was sent to the factory in Vietnam, NEOBAGS Inc. They are expecting the 30% down payment of $149,886.34. Moreover, please note that these numbers are factory on board (FOB) and not the landed costs. The costs from the freight forwarding company have not been included yet.
>
> In this email I'm also including the PO tracker as requested. This includes the B2B order schedule and we ship to the accounts, as well as the profit margins. Note: PO 1006 will differ from the schedule due to an additional 2,200 units that were ordered for our e-commerce & retail stores, as well as samples for the accounts and for marketing.
>
> Please let me know if you need anything further.
>
> Regards,

4

BH000022

Case Number: PC-2016-5535
Filed in Providence/Bristol County Superior Court
Submitted: 5/25/2018 3:17:59 AM
Envelope: 1558620
Reviewer: Daniel O.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 58 of 97 PageID #: 63

RZY

Rodrigo Zetina-Yglesias

Director of Operations

<image001.png>

    o. 401.632.4500

    m. 401.612.5200

    ri. 39 Pike St., Providence, RI 02903

    w. www.BENRUS.com

<image002.png>

<image003.png>

<image004.png>

<image005.png>

<image006.png>

<image007.png>

<image008.jpg>

This e-mail message may contain confidential or legally privileged information and is intended only for the use of the intended recipient(s). Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. E-mails are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, or contain viruses. Anyone who communicates with us by e-mail is deemed to have accepted these risks. Company Name is not responsible for errors or omissions in this message and denies any responsibility for any damage arising from the use of e-mail. Any opinion and other statement contained in this message and any attachment are solely those of the author and do not necessarily represent those of the company.

<BENRUS BTS16_Confirmed POs_06MAR2015.pdf>

<B2B ORIGINALS PO TRACKER WRECEIVALBLES AND PROFIT.XLSX>

<PO_1006_from_BENRUS_LLC_79420.pdf>

BH000023

Case Number: PC-2018-5834
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 10:17:59 AM
Envelope: 1638620
Reviewer: Carol M.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 59 of 97 PageID #: 64

# EXHIBIT 2

Case Number PC-2018-0935
Filed in Providence/Bristol County Superior Court
Submitted: 5/25/2018 3:17:59 AM
Envelope: 1538620
Reviewer: Carol M.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 60 of 97 PageID #: 65

**Wendy Smith**

| | |
|---|---|
| From: | Jean Harrington |
| Sent: | Thursday, April 21, 2016 11:19 AM |
| To: | Michael Sweeney; Rodrigo Zetina |
| Cc: | Giovanni Feroce; Julie Koololan |
| Subject: | RE: BENRUS Backpacks and Watches: Production Timelines and Payment Schedules |

Please confirm that the items are shipped directly to the end customers.

Thank you

From: Michael Sweeney
Sent: Thursday, April 21, 2016 10:53 AM
To: Rodrigo Zetina <rodrigo@benrus.com>
Cc: Giovanni Feroce <giovanni@benrus.com>; Julie Koololan <Julie@benrus.com>; Jean Harrington <jharrington@duffysweeney.com>
Subject: Re: BENRUS Backpacks and Watches: Production Timelines and Payment Schedules

Rod

Work with Jean today.

I am close to securing the bridge loan for the backpacks.

The security for repayment directly from the AR collection inn September/October is the key. Jean needs that payment to come c/o our trust and will explain how nit will work.
I gave Jean the terms I can close and she will prepare simple loan/security docs so we could make first funds tomorrow or Monday.

Gio - critical to close on more equity next week etc.

The lenders said they would only convert later if you have raised the $3mm new cash (above payable conversion) and funded the plan fully.


On Apr 20, 2016, at 7:02 PM, Rodrigo Zetina <rodrigo@benrus.com> wrote:

> Good afternoon,
>
> Below you will find the backpack production order funding and payback timelines. This includes bank information for the factory in Vietnam as well as our receivables schedule. Furthermore, you will find our watch production schedule and payment timelines.
>
> <u>Backpacks: Back to School 2016</u>
>
> The following would be the payment schedule to our factory in Vietnam and our receivables, assuming the funds are disbursed on Friday, April 22nd:

1

BH000035

Case Number: 1918-03-05
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 30:17:59 AM
Envelope: 1558620
Reviewer: Darol M.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 61 of 97 PageID #: 66

| Transaction | Amount | Date |
|---|---|---|
| 30% Initial Deposit | $ 149,886.34 | 22-Apr-16 |
| Balance Ex-Factory | $ 349,734.80 | 21-Jun-15 |
| Total Cost FOB | $ 499,621.14 | |



The ex-factory date is expected for June 21st. In order to meet the start ship dates of our accounts, the majority of the order will need to be shipped via air carrier.

| Units Shipping | Shipping Method | Date |
|---|---|---|
| 44,000 | Air Carrier (LA)/Drop Ship | 15-Jun-16 |
| 6,000 | Ship (LA) | 15-Jun-16 |

Again, operating under the expected ex-factory date of June 21st, below would be the updated receivables schedule. The only pending portion would be the AAFES order that was cancelled.

| Receivables | Amount | Estimated Date |
|---|---|---|
| 1st Payment | $ 886,289.00 | 1-Sep-16 |
| 2nd Payment | $ 70,142.00 | 30-Sep-16 |
| 3rd Payment | $ 22,932.00 | 31-Dec-16 |
| Total | $ 979,363.00 | |

## Watches: Back to BENRUS

Please find the production timeline below and attached a detailed PDF:

| Transactions | Amount | Date |
|---|---|---|
| Prototypes & Samples | $ 60,000.00 | Apr-16 |
| Initiate Production (30% Initial Deposit) | $ 300,000.00 | Jun-16 |
| 1st Delivery of 8k Units (30% Second Payment)* | $ 300,000.00 | Sep-16 |
| 2nd Delivery of 8k Units (40% Balance)* | $ 400,000.00 | Oct-16 |
| Total | $ 1,060,000.00 | |

*These payments _do not_ include shipping costs.

Should you need anything further, please don't hesitate to let me know.

Regards,
RZY

2

BH000036

Case Number: PC-2018-5635
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 3:51:59 AM
Envelope: 1658620
Reviewer: Dennis M.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 62 of 97 PageID #: 67

Rodrigo Zetina-Yglesias

Director of Operations

<image001.png>

o. 401.632.4500

m. 401.612.5200

ri. 39 Pike St., Providence, RI 02903

w. www.BENRUS.com

<image002.png> <image003.png> <image004.png> <image005.png> <image006.png> <image007.png> <image008.jpg>

This e-mail message may contain confidential or legally privileged information and is intended only for the use of the intended recipient(s). Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. E-mails are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, or contain viruses. Anyone who communicates with us by e-mail is deemed to have accepted these risks. Company Name is not responsible for errors or omissions in this message and denies any responsibility for any damage arising from the use of e-mail. Any opinion and other statement contained in this message and any attachment are solely those of the author and do not necessarily represent those of the company.

<BENRUS BTS16_Confirmed POs_06MAR2015.pdf>

<B2B ORIGINALS PO TRACKER WRECEIVALBLES AND PROFIT.XLSX>

<PO_1006_from_BENRUS_LLC_79420.pdf>

<BENRUS Production Time Line 2016.pdf>

BH000037

Case Number: PC-2018-5035
Filed in Providence/Bristol County Superior Court
Submitted: 8/23/2018 10:17:59 AM
Envelope: 1658628
Reviewer: Carol M.

# EXHIBIT 3

Case Number: PC-2018-5857
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 10:17:59 AM
Envelope: 1658620
Reviewer: Carol G.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 64 of 97 PageID #: 69

## PURCHASE ORDER PURCHASE AGREEMENT

THIS PURCHASE ORDER PURCHASE AGREEMENT ("Agreement") is made and entered into this 23rd day of April, 2016 by and between PalmLake Group, LLC, a Florida limited liability company with an address of 11413 Pink Oleander Lane, Palm Beach Gardens, Florida 33418 ("Funder") and Benrus, LLC, a Delaware limited liability company having an address of 39 Pike Street, Providence, RI 02903 ("BENRUS").

### BACKGROUND

BENRUS is engaged in the business of the sale of consumer items including backpacks and delivers such merchandise to customers on a credit basis. BENRUS currently has a production order for backpacks (the "**Production Order**") with Neobags, Inc. (the "**Supplier**"), a copy of which is attached hereto as **Exhibit A**. BENRUS has purchase orders for the backpacks (each a "**Purchase Order**" and collectively, "**Purchase Orders**") from purchasers of inventory (a "**Customer**" or collectively, the "**Customers**"), copies of which are attached hereto as **Exhibit B**. Funder is willing to purchase from BENRUS the Purchase Orders issued from the Customers and identified on **Exhibit B**, subject to the terms set forth in this Agreement. The backpacks that are the subject of the Production Order are referred to sometimes herein as the "**Inventory**".

NOW, THEREFORE, in consideration of the covenants and conditions set forth herein, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

1. **Sale of Purchase Order.** BENRUS does hereby sell, transfer and assign all of its right, title and interest in and to the Purchase Orders to Funder, together with all moneys due or which may become due upon such Purchase Orders. This Agreement shall be deemed to evidence the assignment of such Purchase Orders.

2. **Purchase Price.** Funder agrees to purchase the Purchase Orders from BENRUS at a price not to exceed $499,621.14 (the "**Purchase Price**"). The Purchase Price shall be paid in phases in accordance with the terms of the Production Order. The Chief Executive Officer of BENRUS shall submit written direction to Funder to pay by wire transfer on BENRUS' behalf the Supplier for such Inventory which is the subject of the Purchase Orders in accordance with the terms of the Production Order. BENRUS hereby directs Funder to wire $149,886.34 to the Supplier in accordance with the wire instructions set forth in **Exhibit C**, attached hereto.

3. **Fees and Collection.**

   a.      BENRUS acknowledges and agrees that it will be responsible for all bank fees related to funding and all shipping and freight charges.

   b.      Upon shipment or delivery of the items specified in the Purchase Orders, an invoice will be generated by BENRUS (the "**Invoice**") which will become the sole property of Funder until such time as all sums due to Funder pursuant to this Agreement are paid in full. All proceeds received with respect to the Purchase Orders and/or the Invoices resulting therefrom

1

Case Number: PC-2018-4040
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 3:17:59 AM
Envelope: 1658620
Reviewer: Daniel G.

are to be applied first to pay Funder's Fees, then to repay Funder for the Purchase Price of the Purchase Orders paid and outstanding and all other sums due thereon or with respect thereto (collectively, the "**Payment Obligation**"), with any remainder being remitted to BENRUS.

    4.   **Fee.** It is expressly understood and agreed that Funder's Fees for services hereunder shall equal 15% of the advances with respect to the Purchase Price for the Purchase Orders. For Example, upon the wire of the $149,886.34 as directed above a fee is due to Funder equal to $22,482.95. Once the money is advanced the Fee is not subject to reduction.

    5.   **Recourse.** Funder shall be entitled to immediate and full recourse against and repayment by BENRUS and to demand payment equal to the Payment Obligation, if one of the following events occurs:

    a.   The Purchase Orders are not filled and/or invoiced to the Customer within sixty (60) days following payment of the full Purchase Price therefor having been advanced to the Supplier, regardless of the reason.

    b.   A Credit Problem, (defined as a Customer's inability to pay debts as they become due because of insolvency, the filing of a voluntary petition in bankruptcy, the quitting of business and the like, regardless of the validity of any such problem).

    c.   A Credit Dispute, (defined as a claim by the Customer against BENRUS, of any kind whatsoever the reduces the amount collectable from the Customer, arising from any kind of disagreement between the Customer and BENRUS, valid or invalid, at any time, both before and/or after signing of this Agreement, regardless of the validity of any such dispute).

    d.   BENRUS breaches any warranty, representation or promise in this Agreement, or when any representation or warranty made by BENRUS is untrue.

    e.   BENRUS contributes to or aggravates in any manner the Credit Problems of the Customer.

    f.   The Customer alleges a claim of loss or offset of any kind against BENRUS or Funder, regardless of the validity of any such claim or offset.

    g.   A mistaken, incorrect and/or erroneous Purchase Order is submitted by BENRUS to Funder.

    h.   Any circumstance arises which, in the Funder's sole judgment, may delay, prevent or threaten to delay or prevent payment of the Purchase Orders in full to Funder.

    i.   Any fraud shall have been committed by BENRUS or any Customer.

    j.   An amount equal to the Payment Obligation is not paid to Funder within **ninety (90)** days of payment of the full Purchase Price, whether by the Customer invoiced for the

Case Number: PC-2018-3755
Filed in Providence/Bristol County Superior Court
Submitted: 6/25/2018 30:17:53 AM
Envelope: 1658620
Reviewer: Daniel M.

Purchase Order or otherwise, regardless of the reason.

k.     BENRUS has not closed and received subscriptions equal to at least $2,000,000 in cash in connection with its private offering of up to $7,000,000 of Class B Units as described in that certain Confidential Offering Memorandum dated March 11, 2016 by September 30, 2016.

**6.   Remedies.** In addition to demanding payment pursuant to **Section 5**, Funder will have no obligation to advance any additional sums of the Purchase Price.   Within five (5) business days following Funder's demand for payment, BENRUS will pay Funder an amount equal to the Payment Obligation with respect to which any one or more of the events set out in **Section 5** above has occurred, regardless of the validity of any such event.   If Funder does not receive full payment therefor within the time provided herein, Funder shall have, in addition to all other remedies provided for under this Agreement and by law, the right to:

a.     Withdraw from and off-set such amount to any sums, monies or other properties then   or thereafter, in Funders possession or in transit and to charge-back or sell back the Purchase Orders to BENRUS.

b.     In its sole discretion, at any time, to notify any account debtor/customer of BENRUS to  make payments directly to Funder, irrespective of whether such account has been purchased by Funder.

c.     Exercise any and all remedies available to a secured party under the Uniform Commercial Code or otherwise at law.

**7.   Notice of Dispute.** As of the date hereof no defense, offset, or counterclaim exists with respect to the Purchase Orders. BENRUS shall provide written notice to Funder within twenty-four hours of BENRUS obtaining any knowledge from any source of any dispute, disagreement or  irregularity of any kind between the BENRUS and a n y Customer. Funder shall have the right, but not the  obligation, to settle any dispute with respect to the Purchase Order or any account directly with  the Customer; however, any such settlement shall not relieve BENRUS from responsibility for full payment of  the Payment Obligation.

**8.   Property of Funder.** Upon Funder's purchase of the Purchase Orders, any and all payments from the Customers as to the Purchase Orders are hereby assigned by BENRUS to Funder  and are the sole property of Funder and BENRUS agrees not to interfere with payment thereof by the Customers;  however, should BENRUS pay the Payment Obligation in full to Funder, or should the Purchase Order be charged back or sold back to BENRUS by Funder, and Funder shall have received  full payment therefor, then title thereto shall revert to BENRUS.

**9.   Payments Received by BENRUS.** BENRUS warrants and represents that as of the date hereof, no payment has been made by the Customers named in the Purchase Orders, either to or for the benefit of BENRUS, with respect to any of the Purchase Orders. In the event that  BENRUS receives a payment which is the property of Funder, BENRUS shall be deemed to have received same in  trust for Funder, and BENRUS shall immediately turn over such payment to Funder. In the event that BENRUS  receives a payment which is comprised

3

Case Number: PC-2018-5515
Filed in Providence/Bristol County Superior Court
Submitted: 8/29/2018 3:51:30 AM
Envelope: 1658628
Reviewer: Carol G.

of moneys belonging partially to BENRUS and partially to Funder, BENRUS shall immediately turn over said payment, in its original form, duly endorsed over, to Funder, and Funder shall, upon clearance by Funder's bank of the payment instrument, forward a check to BENRUS for BENRUS's portion of the payment.

If BENRUS fails to turn over to Funder any checks which are the property of Funder or other form of payment which is the property of Funder received by it or in the event the BENRUS deposits any such checks into its own account, this shall be an event of default of this contract, and in addition the BENRUS shall pay Funder the entire Invoice amount related to such payment at once plus liquidated damages equal to twenty percent (20%) of the amount so deposited. The parties agree to liquidate damages by reason of the fact that the damages that are to be expected as a result of such deposit are uncertain in amount and/or difficult to prove. The parties therefore intend to liquidate damages resulting from such deposit in advance and agree that the amount stipulated is reasonable as damages for the deposit by BENRUS of such payments. Nothing herein shall serve to limit Funder's remedies for the continued wrongful retention by BENRUS of Funder's property in the event that BENRUS fails to immediately pay to Funder any monies received by it.

**10. Representations and Warranties of BENRUS.** BENRUS hereby represents and warrants to Funder that, and BENRUS hereby covenants and agrees in favor of Funder that:

a. BENRUS is a limited liability company, validly formed, existing, and in good standing under the laws of the State of Delaware and is properly licensed and authorized to operate its business. BENRUS's principal place of business is located at 39 Pike Street, Providence, RI 020903. BENRUS has not used any other name or been a party to any merger or acquisition in the five-year period immediately preceding the date of this Agreement. The undersigned signatory on behalf of BENRUS represents that he o has full power and authority to execute this agreement and bind BENRUS hereto.

b. The Customers of BENRUS are solvent and BENRUS has provided, and will continue to provide, to Funder all documents and information available to BENRUS concerning the business and creditworthiness of such Customers. BENRUS shall provide Funder with weekly updates as to the status of completion/fulfillment of the Purchase Orders.

c. BENRUS is not, and will not be, insolvent as that term is defined under the United States Bankruptcy Code and the Uniform Commercial Code.

d. As of the date hereof, BENRUS is the lawful owner of the Purchase Orders, with good and undisputed title thereto, free and clear of any liens or encumbrances. The Purchase Orders represent an accurate and undisputed statement of bona fide purchase by the Customers for Inventory from BENRUS in the ordinary course of the BENRUS's business for a sum certain which will be due and payable arising out of a bona fide sale, delivery and acceptance of merchandise or performance of service by BENRUS to Customers in the ordinary course of BENRUS's business, and no person, firm or corporation shall have any lien on, or claim to, such accounts or to the merchandise described thereon or any part thereof.

4

e.   BENRUS shall furnish Funder with full financial statements and other documents and information, including but not limited to proof of payment and/or compliance with all Federal, State and/or local tax requirements, as may be reasonably requested by Funder from time to time.

f.   BENRUS shall notify Funder in writing immediately after obtaining any knowledge from any source of the filing, recording or perfection by any means of any non-consensual lien, claim, levy, attachment, encumbrance or other court or legal proceeding or process against BENRUS or the Customers, or against any property of BENRUS or of the Customers.

g.   BENRUS does not and will not in any manner, whether directly or indirectly, own, control or exercise dominion over the business of the Customers whose Purchase Orders are offered or sold by BENRUS to Funder.

h.   Each and every document, statement, record, book, account, and invoice, and all information, whether financial or otherwise, provided to Funder by BENRUS, whether heretofore or hereafter, shall be true, accurate and correct in all respects.

i.   BENRUS shall not, under any circumstances, interfere with Funder's rights under this Agreement in any manner whatsoever.

j.   BENRUS has not and shall not transfer, assign, or pledge any of its accounts (as such terms are defined in the Uniform Commercial Code) and shall not grant a security interest therein, to any party other than Funder.

k.   BENRUS has not transferred, pledged or granted a security interest in its assets, or any of them, which BENRUS has not fully disclosed in writing to Funder dated the date hereof.

l.   BENRUS has not permitted and shall not permit any lien, encumbrance or security interest to be created upon its assets, or any of them, including but not limited to its accounts receivable and inventory, without the prior written consent of Funder.

m.   BENRUS shall maintain its assets in good order and repair and shall maintain a policy or policies of insurance thereon satisfactory to Funder.

n.   BENRUS shall not sell, assign, pledge or encumber this Agreement or any rights whatsoever hereunder.

o.   BENRUS will maintain such insurance covering BENRUS's business and/or the property of BENRUS's Customers as is customary for businesses similar to the business of BENRUS and name Funder as loss payee of such insurance with respect to all of BENRUS's inventories as its interests may appear.

p.   BENRUS will notify Funder in writing prior to any change in the location of BENRUS's place(s) of business or, if BENRUS has or intends to acquire any additional place(s) of business, or prior to any change in BENRUS's chief executive office, the office or offices

5

Case Number: PC-2018-8935
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 30:17:59 AM
Envelope: 1638620
Reviewer: Carol M.

Case 1:18-cv-00506-WES-LDA    Document 1-1    Filed 09/12/18    Page 69 of 97 PageID #: 74

where BENRUS's books and records concerning accounts are located.

q. BENRUS will immediately notify Funder in writing of any proposed change of BENRUS's name, identity, legal entity, corporate structure, use of additional trade name(s), and/or any proposed change in any of the officers, principals, partners, and/or managers of BENRUS.

r. BENRUS will work diligently to complete the Purchase Orders and will promptly take such further action as Funder may reasonably request from time to time in order to cause the Customers to make payment with respect thereto.

### 11. Grant of Security Interest.

a. As a further inducement for Funder to enter into this Agreement, BENRUS hereby grants to Funder, as collateral for the payment or repayment of any and all BENRUS's obligations now or hereafter owing to Funder, a security interest in all of BENRUS's presently existing, or hereafter arising, now owned or hereafter acquired assets, including all accounts, instruments, documents, chattel paper, money, deposit accounts, commercial tort claims, general intangibles, insurance policies, investment property, goods, inventory, rights to proceeds of written letters of credit, contract rights, equipment and vehicles and any and all products and/or proceeds of the foregoing (collectively, the "Collateral"), to be and remain effective during any time when any indebtedness or obligation whatsoever exists by BENRUS to Funder. BENRUS shall not sell, transfer or otherwise convey or dispose of any of said property, with the exception of finished inventory held for sale or repair and sold or used in the usual course of BENRUS's business.

b. BENRUS shall, upon request of Funder, furnish to Funder such further information, execute and deliver to Funder such documents and instruments (including, without limitation, Uniform Commercial Code financing statements) and shall do such other acts and things as Funder may at any time reasonably request relating to the perfection or protection of the security interest created by this Agreement or for the purpose of carrying out the intent of this Agreement. Without limiting the foregoing, BENRUS shall cooperate and do all acts deemed necessary or advisable by Funder to continue in Funder a perfected first security interest in the Collateral, and shall obtain and furnish to Funder any subordinations, releases, landlord waivers, lessor waivers, mortgagee waivers, or control agreements, and similar documents as may be from time to time requested by, and in form and substance satisfactory to Funder.

c. BENRUS authorizes Funder to file a financing statement and amendments thereto describing the Collateral and containing any other information required by the applicable Uniform Commercial Code and all proper terminations of the filings of other secured parties with respect to the Collateral, in such form and substance as the Funder, in its sole discretion, may determine. BENRUS irrevocably grants to Funder the power to sign BENRUS's name and generally to act on behalf of BENRUS to execute and file applications for title, transfers of title, financing statements, notices of lien, demands for terminations of other security interests in any of the Collateral and other documents pertaining to any or all of

6

the Collateral; this power is coupled with Funder's interest in the Collateral. BENRUS shall, if any certificate of title be required or permitted by law for any of the Collateral, obtain and promptly deliver to Funder such certificate showing the lien of this Agreement with respect to the Collateral. BENRUS ratifies its prior authorization for Funder to file financing statements and amendments thereto describing the Collateral and containing any other information required by the Uniform Commercial Code if filed prior to the date hereof.

d.   With respect to the security interest in Inventory granted herein and with respect to the Purchase Orders, BENRUS acknowledges such security interest is a purchase money security interest and all advances made by Funder to BENRUS shall be used exclusively by BENRUS to purchase items of Inventory.

12.   **Power of Attorney.** In order to facilitate performance of this Agreement, BENRUS irrevocably appoints Funder, or any person(s) designated by Funder, as its attorney in fact, which said appointment is coupled with an interest and shall remain in full force and effect until the Purchase Price of the Purchase Orders sold to Funder have been paid in full and all obligations of BENRUS to Funder have been fully discharged, with full power to:

a.   Strike or cover BENRUS's address on all invoices and statements of account mailed or to be mailed to customers and to substitute thereon the designated address.

b.   Receive and open all mail addressed to BENRUS, or to BENRUS's trade name at Funder's address and the designated address.

c.   Endorse the name of BENRUS on any checks or other evidences of payment that come into Funder's possession on accounts owing to Funder by BENRUS or on which Funder holds a security interest and on any invoices or other documents relating to any of such Purchase Order or accounts, and deposit same into any account of Funder, or such other account as Funder shall choose.

d.   In its sole discretion, at any time, to notify any account debtor/customer of BENRUS to make payments directly to Funder, irrespective of whether such account has been purchased by Funder.

e.   In BENRUS's name, or otherwise, demand, sue for, collect, and, without the need for BENRUS's prior approval, give releases for, any and all moneys due or coming due on accounts purchased by or pledged to Funder.

f.   Compromise, settle, prosecute or defend any action, claim or proceeding concerning accounts purchased by or pledged to Funder.

g.   Do any and all things reasonably necessary or proper to carry out the purpose and intent of this Agreement.

13.   **Default.** Any one or more of the following shall represent a default under this Agreement:

7

Case Number: PC-2018-5935
Filed in Providence/Bristol County Superior Court
Submitted: 8/23/2018 3:17:59 AM
Envelope: 1658620
Reviewer: Carol G.

a.   The failure of BENRUS to pay the Payment Obligation or any other sums or other indebtedness to Funder when due.

b.   The breach by BENRUS or any guarantor of any of BENRUS's obligations to Funder (each, a **"Guarantor"**) of any term, provision, warranty, representation, covenant or promise made hereunder or under any other agreement between Funder and BENRUS or any Guarantor.

c.   The appointment of a receiver or trustee of all or a substantial portion of the assets of BENRUS or any Guarantor, the insolvency of BENRUS or any Guarantor, or the inability of BENRUS or any Guarantor to pay debts as they mature, or an assignment by BENRUS or any Guarantor for the benefit of creditors, or the voluntary or involuntary filing of a petition in bankruptcy court or a similar proceeding in any court by the BENRUS or by or against BENRUS or any Guarantor.

d.   The filing or service of any levy, attachment, execution, tax assessments or similar process affecting or which could threaten the Collateral.

e.   The furnishing at any time to Funder of a materially false or inaccurate document, representation, warranty, or other information, whether financial or otherwise.

f.   Funder determines in its sole discretion that BENRUS has suffered a material adverse change in its business which change puts payment of its obligations hereunder in jeopardy.

**14.   Remedies.**   In the event of a default, Funder shall be entitled to cease any further advances of the Purchase Price and or Funder shall have the right to do the following, in addition to any other remedies provided hereunder or by law:

a.   Declare any and all amounts due hereunder and any other indebtedness owing by BENRUS to Funder to be immediately due and payable.

b.   Enforce the security interest granted hereunder including to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the BENRUS company preceding foreclosure or sale, and to apply the proceeds, over and above the cost of the receivership, against the indebtedness. The receiver may serve without bond if permitted by law. Funder's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the amount due the Funder under this Agreement by a substantial amount. Receiver may be appointed by a court of competent jurisdiction upon ex parte application and without notice, notice being expressly waived.

c.   Require BENRUS to assemble the collateral and the records pertaining to the Purchase Order, any accounts and/or Inventory and produce them to Funder at such time and place as Funder designates.

8

Case Number: PC-2018-8535
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 30:17:59 AM
Envelope: 1688628
Reviewer: Carol M.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 72 of 97 PageID #: 77

d.    Enter the BENRUS's premises and take possession of the collateral and of all records pertaining to the Purchase Order, any accounts and/or any other collateral.

e.    Grant extensions, compromise claims and settle disputes with respect to any accounts purchased by Funder or otherwise pledged hereunder, irrespective of the price of methods of payment, all without prior notice to or permission of BENRUS.

f.    In connection with the assembly and/or disposition of any Collateral, to use any trademark, trade name, trade style, copyright, patent right or technical process used or utilized by BENRUS.

g.    Return to BENRUS any surplus realized and hold BENRUS liable for any deficiency as provided in the Uniform Commercial Code or by state law.

h.    Collect post-default damages (in addition to the full amount then due at the time of default) equal to three and one-half percent (3.50%) of the amount demanded by Funder for each 30-day period or portion thereof following Funder's demand for payment until such demanded sums are paid in full.

i.    To collect any and all sums due hereunder or otherwise from BENRUS to Funder, initiate electronic debit entries through the ACH system to BENRUS's account or any other deposit account maintained by BENRUS wherever located, and to initiate as necessary credit entries and other adjustments as to any debit entries made in error.

j.    Instruct the United States Postal Service to redirect all mail addressed to BENRUS, or to BENRUS's trade name to Funder's address.

k.    Without regard to any waste, adequacy of the security or solvency of BENRUS, apply for the appointment of a receiver of the Collateral, to which appointment BENRUS hereby irrevocably consents, whether or not foreclosure or repossession proceedings have been commenced hereunder or under any related agreement and whether or not a foreclosure sale or secured party sale has occurred.

l.    Notify any account debtor/customer of BENRUS to make payments directly to Funder, irrespective of whether such account has been purchased by Funder.

15.    **Termination.** Funder shall be under no obligation to purchase any purchase orders after the purchase of the Purchase Orders identified in this Agreement.

16.    **Indemnification.** BENRUS shall indemnify and hold Funder harmless against any and all liability, claim, demand, ill-will and damage arising from Funder's collecting or attempting to collect any account or to liquidate any Inventory, and from the failure of BENRUS to pay withholding taxes due and payable to any taxing authority; together with all costs and reasonable attorneys' fees. The provisions of this <u>Section 16</u> shall survive termination or expiration of this Agreement.

9

Case Number: PC-2018935
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 3:51:59 AM
Envelope: 1658620
Reviewer: Carol M.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 73 of 97 PageID #: 78

17. **Direct Payment.** By executing this Agreement, BENRUS acknowledges and agrees to cause all invoices with respect to the Purchase Order to contain the payment instructions set forth in **Exhibit D** attached hereto to forward payments due to Funder under this Agreement to the account specified by Funder, notwithstanding any of the other terms of this Agreement.

18. **Optional Conversion.** BENRUS has granted Funder the option to convert any sums outstanding under this Agreement into equity of BENRUS, in the Funder's sole discretion, in accordance with the terms set forth in a separate letter agreement.

19. **Miscellaneous.**

a. **Waivers.** No action taken pursuant to this Agreement, including any investigation by or on behalf of any party shall be deemed to constitute a waiver by the party taking such action of compliance with any representation, warranty, covenant or agreement contained herein or and in any documents delivered in connection herewith. No waiver by any party hereto of any right or remedy shall be effective unless in writing and signed by the party waiving said right or remedy. A waiver of a right or remedy under this Agreement is not a waiver of the right or remedy on any subsequent occasion.

b. **Notices.** All notices, requests, demands and other communications which are required or may be given under this Agreement shall be in writing and shall be delivered or sent by overnight delivery courier to the party at the address set out herein above or to such other address as such party shall have specified by notice in writing to the other party. Any such notice shall be deemed to have been received on the date of actual receipt.

c. **Sections and Other Headings.** The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretations of this Agreement.

d. **Governing Law.** This agreement and all transactions contemplated hereby shall be governed by, construed and enforced in accordance with the laws of the State of Florida, exclusive of its choice of law rules. THE PARTIES HEREIN WAIVE TRIAL BY JURY AND AGREE TO SUBMIT TO THE PERSONAL JURISDICTION AND VENUE OF A COURT OF SUBJECT MATTER JURISDICTION LOCATED IN RHODE ISLAND. In addition to any other relief to which Funder may be entitled, BENRUS agrees to reimburse Funder for Funder's reasonable attorney's fees, court costs, and all other expenses, whether or not taxable by the court as costs, incurred in enforcing its rights under this Agreement, including, without limitation, in enforcing the security interest granted herein and/or preserving the collateral subject thereto.

e. **Effective Date.** This Agreement shall become effective upon acceptance and execution hereof by Funder's authorized representative.

f. **Reliance by Funder.** All representations and warranties made by BENRUS herein are true and correct and BENRUS acknowledges and understands that Funder has relied

10

thereon in entering into this Agreement.

g.    **Entire Agreement; Severability**. This Agreement and the agreement referenced in <u>Section 18</u> above constitutes the entire agreement of the  parties as to the subject matter set forth herein and may be amended or modified only by written instrument  executed by both parties. In the event any one or more of the provisions contained in this Agreement is held to  be invalid, illegal or unenforceable in any respect, then such provision shall be ineffective only to the extent of  such  prohibition  or  invalidity,  and  the  validity,  legality,  and  enforceability  of  the remaining  provisions  contained herein shall not in any way be affected or impaired thereby.

h.    **Assignment**. Funder may assign this contract without notice to or the consent of BENRUS.  BENRUS may not assign this Agreement or its obligations hereunder to any person without the written consent of Funder.  This Agreement shall be binding upon the parties successors and permitted assigns.

[Signatures follow on the next page.]

11

Case Number: PC-2018-0035
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 10:17:59 AM
Envelope: 1658620
Reviewer: Carol M.

Case 2:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 75 of 97 PageID #: 80

IN WITNESS WHEREOF, this Agreement has been executed by each of the individual parties hereto and   signed by an officer thereunto duly authorized and attested under the corporate seal of the Secretary of the  corporate party hereto, if any, all on the date and year set first set forth above.

BENRUS, LLC

By: _____

Giovanni Feroce, Chief Executive Officer

PALMLAKE GROUP, LLC

By: _____

Michael F. Sweeney, Manager

Case Number: PC-2018-8835
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 3:17:59 AM
Envelope: 1658620
Reviewer: Carol M.

EXHIBIT A

PRODUCTION ORDER

Case Number: PC-2018-5835
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 10:17:50 AM
Envelope: 1658620
Reviewer: Dj C.

CASE 1:18-CV-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 77 of 97 PageID #: 82

BENRUS LLC

39 PIKE STREET
RI 02903

# Purchase Order

| | Date | P.O. No. |
|---|---|---|
| | 3/3/2016 | 1006 |

| Vendor | Ship To |
|---|---|
| NEOBAGS INC. VIETNAM<br>JM Seng<br>Saigon ICT Tower<br>Ho Chi Minh City<br>Vietnam | BENRUS LLC<br>39 PIKE STREET<br>RI 02903 |

| Item | Description | Qty | Rate | Amount |
|---|---|---|---|---|
| B1CHSS | PRIVATE BACKPACK - CHARCOAL/SILVER STRIPE | 3,096 | 6.70 | 20,743.20 |
| B1NA | PRIVATE BACKPACK - NAVY ANCHOR | 474 | 6.84 | 3,242.16 |
| B1NS | PRIVATE BACKPACK - NAVY STRIPE | 402 | 6.84 | 2,749.68 |
| B3BK | SCOUT - SOLID BLACK | 13,536 | 9.25 | 125,208.00 |
| B3BU | SCOUT - BURGUNDY | 10,320 | 9.25 | 95,460.00 |
| B3BUKHS | SCOUT - BURGUNDY/KHAKI | 1,146 | 9.25 | 10,600.50 |
| B3BUNS | SCOUT - BURGUNDY/NAVY STRIPE | 1,170 | 9.25 | 10,822.50 |
| B3CHSS | SCOUT - CHARCOAL/SILVER STRIPE | 2,430 | 9.25 | 22,477.50 |
| B3DB | SCOUT - NAVY | 588 | 9.25 | 5,439.00 |
| B3GC | SCOUT - CAMO | 414 | 9.37 | 3,879.18 |
| B3NA | SCOUT - NAVY ANCHOR | 2,670 | 9.37 | 25,017.90 |
| B3NS | SCOUT - NAVY STRIPE | 3,144 | 9.37 | 29,459.28 |
| B3NSNA | SCOUT - NAVY STRIPE/ ANCHOR | 2,922 | 9.37 | 27,379.14 |
| B3RBC | SCOUT - RED BUFFALO CHECK | 390 | 9.37 | 3,654.30 |
| B3RDNS | SCOUT - RED/NAVY | 6,300 | 9.25 | 58,275.00 |
| B3SG | SCOUT - SILVER GREY | 2,244 | 9.25 | 20,757.00 |
| B3SR | SCOUT - BLACK STAR | 276 | 9.37 | 2,586.12 |
| B3SS | SCOUT - SILVER STRIPE | 618 | 9.37 | 5,790.66 |
| B4UBC | BULLDOG - GREY BUFFALO CHECK | 402 | 5.82 | 2,339.64 |
| B4NSR | BULLDOG - NAVY STAR | 294 | 5.82 | 1,711.08 |
| BB3DS | SCOUT BLACK LABEL BACKPACK - DESERT SAND | 2,214 | 9.95 | 22,029.30 |

| | Total | $499,621.14 |
|---|---|---|

Case Number: PC-2018-8935
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 10:17:59 AM
Envelope: 1658628
Reviewer: Carol M.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 78 of 97 PageID #: 83

EXHIBIT B
PURCHASE ORDERS

See Attached – below is a summary – copies on file

| CUSTOMER | Cost of Goods to Customer |
| --- | --- |
| Tilly's | $237,994 |
| Spencer's | $63,050 |
| Journey's (USA) | $351,540 |
| (DWS) Journey's Canada | $14,910 |
| Robert Wayne | $40,320 |
| Barnes and Noble | $79,779 |
| Total: | $787,593 |

Case Number: PC-2018-6035
Filed in Providence/Bristol County Superior Court
Submitted: 6/25/2018 3:17:59 AM
Envelope: 1658620
Reviewer: Carol M.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 79 of 97 PageID #: 84

EXHIBIT C
Direction to Pay Supplier

**From:** Rodrigo Zetina [mailto:rodrigo@benrus.com]
**Sent:** Thursday, April 21, 2016 1:55 PM
**To:** Jean Harrington <jharrington@duffysweeney.com>
**Cc:** Giovanni Feroce <giovanni@benrus.com>; Julie Kooloian <Julie@benrus.com>; Michael Sweeney <msweeney@duffysweeney.com>
**Subject:** RE: BENRUS Backpacks and Watches: Production Timelines and Payment Schedules

This is the bank information they provided me with:



Case Number: PC-2018-5635
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 10:17:59 AM
Envelope: 1658628
Reviewer: Carol M.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 80 of 97 PageID #: 85

EXHIBIT D
INVOICE PAYMENT INSTRUCTIONS

All invoices relating to the Purchase Orders must direct payment as follows:

- Checks – mail to c/o Duffy & Sweeney, LTD, One Financial Plaza, Suite 1800, Providence, RI 02903

- Wires to the following:

BANK NAME:    Citizens Bank of Rhode Island

63 Westminster Street

Providence, RI 02903

**ABA/ROUTING #.:**

*SWIFT code if via Int'l*    *CTZIUS33*

**ACCOUNT NAME:**    Duffy & Sweeney, LTD.

**ACCOUNT TITLE:**    IOLTA Client's Account

**ACCOUNT #:**

**CLIENT/MATTER: (REF#) # : PALMLAKE RE BENRUS**

Case Number: PC-2018-3931
Filed in Providence/Bristol County Superior Court
Submitted: 6/25/2018 10:17:58 AM
Envelope: 1558628
Reviewer: Carol M.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 81 of 97 PageID #: 86

# EXHIBIT 4

Case Number: PC-2018-6635
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 10:17:58 AM
Envelope: 1655620
Reviewer: Carol M.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 82 of 97 PageID #: 87

## ADDENDUM TO PURCHASE ORDER PURCHASE AGREEMENT

This Addendum to Purchase Order Purchase Agreement (this "Addendum") is made and entered into effective as of May 20, 2016 by and between PalmLake Group, LLC, a Florida limited liability company ("**Funder**") and Benrus, LLC, a Delaware limited liability company ("**BENRUS**").

### INTRODUCTION

On April 23, 2016, Funder and BENRUS entered into that certain Purchase Order Purchase Agreement (the "**Purchase Agreement**") pursuant to which Funder agreed to purchase Purchase Orders from BENRUS at a price not to exceed $499,621.14 (the "**Maximum Purchase Price**"). The Purchase Agreement specifically covers the Purchase Orders identified which relate to the identified Production Order. All capitalized terms used herein without definition shall have the meanings assigned to them in the Purchase Agreement.

On May 5, 2016, BENRUS requested that Funder increase the Maximum Purchase Price by $22,500 and fund an additional $22,500 (the "**Watch Funding Request**") in connection with the pending production of watches to Art & Production, LLC ("**Watch Supplier**") (as further described in **Exhibit A**, attached hereto. Funder agreed to such increase and funding of the Watch Supplier subject to the terms and conditions set forth in this Addendum.

On the date hereof, BENRUS has requested that Funder fund the remaining available amount of the Purchase Price, as amended by this Addendum, to the Supplier in connection with the Production Orders.

NOW, THEREFORE, in consideration of the foregoing, the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1. The Maximum Purchase Price is hereby increased by $22,500 to $522,121.14. The Parties agree and acknowledge after giving effect to the $149,886.34 wired to the Supplier on or about April 23, 2016, the $22,500 paid to the Watch Supplier on May 5, 2016, and the $349,734.80 to be wired on the date hereof to the Supplier, there is no further funding available under the Purchase Agreement as the Maximum Purchase Price has been paid by Funder.

2. BENRUS acknowledges and agrees that the fees due in accordance with Section 4 of the Purchase Agreement are (i) $22,482.95 with respect to the initial payment; (ii) $3,375 with respect to the Watch Funding Request; and (iii) $52,460.22 with respect to the final funding request. The total fee amount due to Funder from BENRUS under Section 4 of the Purchase Agreement is $78,318.17.

3. BENRUS acknowledges and agrees that the total Payment Obligation outstanding as of the date hereof is $600,439.31 and BENRUS represents and warrants that the invoices generated from the Purchase Orders will reflect an amount due from the

Customers in excess of the Payment Obligation. BENRUS acknowledges and agrees that the Watch Funding Request will be repaid to Funder before any proceeds from the Invoices are remitted to BENRUS.

4. <u>Representations and Warranties</u>. BENRUS hereby represents and warrants that:

    (a) No event described in Section 5 or Section 13 of the Purchase Agreement has occurred and is continuing, and no event has occurred and is continuing that, but for the giving of notice or the passage of time or both, would constitute any such event; and

    (b) Each of the representations and warranties contained in Sections 9 and 10 of the Purchase Agreement is true and correct in all respects as if made on and as of the date hereof.

5. <u>Ratification of Obligations</u>. All Obligations of BENRUS to Funder are hereby ratified and confirmed.

6. <u>Invoice Instructions</u>. BENRUS shall deliver to Funder copies of all Invoices. Exhibit D to the Purchase Agreement is hereby amended in its entirety as set forth in <u>Exhibit D</u> attached hereto. To the extent that Invoices are generated and paid electronically, BENRUS shall deliver screen shots or some form of evidence of Invoice generation to Funder and shall ensure that payment information is given in accordance with the instructions set forth in Exhibit D, as amended by this Addendum.

7. <u>Miscellaneous</u>. This Addendum shall be governed by and construed in accordance with the laws of the State of Florida without resort to its conflict of laws provisions. Funder has relied on BENRUS representations and warranties ratified and confirmed in this Addendum in entering into this Addendum. Other than as amended by this Addendum, the terms of the Purchase Agreement shall remain in full force and effect. This Addendum may be executed in several counterparts and all so executed shall constitute one agreement binding on all parties hereto. Counterparts delivered by facsimile or in "PDF" form shall be as effective as manually signed counterparts.

{Signatures follow on the next page}

Case Number: PC-2018-6635
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 3:17:59 AM
Envelope: 1658620
Reviewer: Carol M.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 84 of 97 PageID #: 89

IN WITNESS WHEREOF, the parties have executed this Addendum effective as of the date first set forth above.

FUNDER:

PALMLAKE GROUP, LLC

By: _____
Michael F. Sweeney, Manager

BENRUS:

BENRUS, LLC

By: _____
Giovanni Feroce, Chief Executive Officer

3 | Page

Case Number: PC-2018-8835
Filed in Providence/Bristol County Superior Court
Submitted: 8/25/2018 3:17:59 AM
Envelope: 1638620
Reviewer: Carol C.

CASE 1:18-CV-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 85 of 97 PageID #: 90

EXHIBIT A- Information Regarding Watch Supplier

**From:** Rodrigo Zetina [mailto:rodrigo@benrus.com]
**Sent:** Wednesday, May 04, 2016 6:28 PM
**To:** Michael Sweeney <msweeney@duffysweeney.com>
**Cc:** Giovanni Feroce <giovanni@benrus.com>; Jean Harrington <jharrington@duffysweeney.com>; Madison Malloy <Madison@benrus.com>; Richard Nicholson <richard@benrus.com>; Julie Kooloian <Julie@benrus.com>
**Subject:** Watch Order: Back to BENRUS 2016- Order Production and Payment Schedule

Good evening,

Below you will find our watch production timeline and payment schedule. The services provided by Art & Production, LLC, include design, development and project management. Since mid-December of 2015, A&P has been paid $7,500.00 bi-weekly for services rendered. Also, the factory was paid $15,000.00 to begin the second phase: tooling, prototyping and sampling.

Below you will find the production timeline for the order and attached to this email, the detailed PDF *(Attachments on file with original email):*

| Transactions | Amount | Date |
|---|---|---|
| Prototypes  & Samples | $        60,000.00 | Apr-16 |
| Initiate Production (30% Initial Deposit) | $       300,000.00 | Jun-16 |
| 1st Delivery of 8.5k Units (30% Second Payment)* | $       300,000.00 | Sep-16 |
| 2nd Delivery of 8k Units (40% Balance)* | $       400,000.00 | Oct-16 |
| Total | $    1,060,000.00 | |

*These payments do not include shipping costs.*

The following is the current status of invoices (attached) and payments:

| Payment | Description | Amount | Status |
|---|---|---|---|
| Art & Production, LLC | 1/6 installment | $       7,500.00 | Paid |
| Art & Production, LLC | 2/6 installment | $       7,500.00 | Paid |
| Art & Production, LLC | 3/6 installment | $       7,500.00 | Paid |
| Art & Production, LLC | 4/6 installment | $       7,500.00 | Paid |
| Art & Production, LLC | 5/6 installment | $       7,500.00 | Paid |
| Factory | 50% of Phase 2 | $     15,000.00 | Paid |
| Art & Production, LLC | 6/6 installment | $       7,500.00 | Pending |
| Factory | 50% of Phase 2 | $     15,000.00 | Pending |
| Total Paid | | $     52,500.00 | |
| Total Outstanding | | $     22,500.00 | |

In order to move forward, a payment of $22,500.00 must be made to finalize the prototyping and sampling phase.

Please let me know if you have any questions or need anything further from my end.

Regards,
RZY
Rodrigo Zetina-Yglesias
Director of Operations

Case Number: PC-2018-6035
Filed in Providence/Bristol County Superior Court
Submitted: 8/23/2018 1:33:29 AM
Envelope: 1658620
Reviewer: Daniel G.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 86 of 97 PageID #: 91

EXHIBIT D
INVOICE PAYMENT INSTRUCTIONS

All invoices relating to the Purchase Orders must direct payment as follows:

- Checks – Make Payable to BENRUS, LLC
  - Address:     c/o PalmLake Group, LLC
    - One Financial Plaza, Suite 1800
    - Providence, RI 02903

- Wires – Bank Name:     Citizens Bank of Rhode Island
  - 63 Westminster Street
  - Providence, RI 02903

  - ABA/Routing #:     ▮▮▮▮▮
  - *Swift code if via Int'l:*  CTZIUS33
  - Account Name:     Duffy & Sweeney, LTD
  - Account Title:     IOLTA Client Acount
  - Account #:     ▮▮▮▮▮
  - Reference:     PalmLake Re BENRUS

Case Number: PC-2018-6635
Filed in Providence/Bristol County Superior Court
Submitted: 8/23/2018 11:17:59 AM
Envelope: 1658620
Reviewer: Darol M.

# EXHIBIT 5

Case Number: PC-2018-6635
Filed in Providence/Bristol County Superior Court
Submitted: 05/25/2018 3:57:29 AM
Envelope: 1538620
Reviewer: Dawn G.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 88 of 97 PageID #: 93

## SECOND ADDENDUM TO PURCHASE ORDER PURCHASE AGREEMENT

This Second Addendum to Purchase Order Purchase Agreement (this "Addendum") is made and entered into effective as of June 28, 2016 by and between PalmLake Group, LLC, a Florida limited liability company ("Funder") and Benrus, LLC, a Delaware limited liability company ("BENRUS").

### INTRODUCTION

On April 23, 2016, Funder and BENRUS entered into that certain Purchase Order Purchase Agreement (the "Purchase Agreement") pursuant to which Funder agreed to purchase Purchase Orders from BENRUS at a price not to exceed $499,621.14 (the "Maximum Purchase Price"). The Purchase Agreement specifically covers the Purchase Orders identified which relate to the identified Production Order. All capitalized terms used herein without definition, unless the context otherwise required, shall have the meanings assigned to them in the Purchase Agreement.

On May 5, 2016, BENRUS requested that Funder increase the Maximum Purchase Price by $22,500 and fund an additional $22,500 (the "Watch Funding Request") in connection with the pending production of watches to Art & Production, LLC ("Watch Supplier"). Funder agreed to such increase and funding of the Watch Supplier subject to the terms and conditions set forth in this Addendum.

On May 5, 2016, BENRUS requested that Funder fund the remaining available amount of the Purchase Price, as amended by this Addendum, to the Supplier in connection with the Production Orders.

On the date hereof, BENRUS requested that Funder increase the Maximum Purchase Price by $77,553 and fund an additional $77,553 regarding shipping fees and duties relating to the Purchase Orders. Funder agreed to such increase and funding subject to the terms and conditions of this Addendum.

NOW, THEREFORE, in consideration of the foregoing, the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1. The Maximum Purchase Price is hereby increased by $77,553 to $599,674.14. The Parties agree and acknowledge after giving effect to the $149,886.34 wired to the Supplier on or about April 23, 2016, the $22,500 paid to the Watch Supplier on May 5, 2016, the $349,734.80 to wired on or about May 20, 2016 to the Supplier, and the $77,553 wired to the shipping company, there is no further funding available under the Purchase Agreement as the Maximum Purchase Price has been paid by Funder.

2. BENRUS acknowledges and agrees that the fees due in accordance with Section 4 of the Purchase Agreement are (i) $22,482.95 with respect to the initial payment; (ii) $3,375 with respect to the Watch Funding Request; (iii) $52,460.22 with respect to the second Supplier payment and (iv) $11,632.95 with respect to the final funding

Case Number: PC-2018-8835
Filed in Providence/Bristol County Superior Court
Submitted: 8/23/2018 3:11:18 AM
Envelope: 1658628
Reviewer: Carol M.

CASE 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 89 of 97 PageID #: 94

regarding shipping costs. The total fee amount due to Funder from BENRUS under Section 4 of the Purchase Agreement is $89,951.12.

3. BENRUS acknowledges and agrees that the total Payment Obligation outstanding as of the date hereof is $689,625.26 and BENRUS represents and warrants that the Invoices generated from the Purchase Orders will reflect an amount due from the Customers in excess of the Payment Obligation. BENRUS acknowledges and agrees that all proceeds with respect to the Purchase Orders and/or the Invoices resulting therefrom are to be applied first to pay Funder's Fees, then to repay the Watch Funding Request and the funding for shipment costs, and then to repay Funder for the Purchase Price of the Purchase Orders paid and outstanding and all other sums due thereon or with respect thereto, before any proceeds from the Invoices are remitted to BENRUS. Payment Obligation under the Purchase Agreement is amended hereby to include include the Watch Funding Request and the shipment funding as recited in the preceding sentence.

4. <u>Representations and Warranties</u>. BENRUS hereby represents and warrants that:

    (a) No event described in Section 5 or Section 13 of the Purchase Agreement has occurred and is continuing, and no event has occurred and is continuing that, but for the giving of notice or the passage of time or both, would constitute any such event; and

    (b) Each of the representations and warranties contained in Sections 9 and 10 of the Purchase Agreement is true and correct in all respects as if made on and as of the date hereof.

5. <u>Ratification of Obligations</u>. All Obligations of BENRUS to Funder are hereby ratified and confirmed.

6. <u>Invoice Instructions</u>. BENRUS shall deliver to Funder copies of all Invoices. To the extent that Invoices are generated and paid electronically, BENRUS shall deliver screen shots or some form of evidence of invoice generation to Funder and shall ensure that payment information is given in accordance with the instructions set forth in Exhibit D, as amended by the First Addendum. BENRUS hereby represents and warrants that with respect to any Invoices generated as of the date hereof, it has complied with the provisions of this Section 6 in all respects.

7. <u>Miscellaneous</u>. This Addendum shall be governed by and construed in accordance with the laws of the State of Florida without resort to its conflict of laws provisions. Funder has relied on BENRUS representations and warranties ratified and confirmed in this Addendum in entering into this Addendum. Other than as amended by this Addendum, the terms of the Purchase Agreement shall remain in full force and effect. This Addendum may be executed in several counterparts and all so executed shall constitute one agreement binding on all parties hereto. Counterparts delivered by facsimile or in "PDF" form shall be as effective as manually signed counterparts.

Case Number: PC-2018-6635
Filed in Providence/Bristol County Superior Court
Submitted: 8/23/2018 10:17:29 AM
Envelope: 1658628
Reviewer: Carol M.

CASE 1:18-CV-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 90 of 97 PageID #: 95

IN WITNESS WHEREOF, the parties have executed this Addendum effective as of the date first set forth above.

FUNDER:

PALMLAKE GROUP, LLC

By: _____
Michael F. Sweeney, Manager

BENRUS:

BENRUS, LLC

By: _____
Giovanni Feroce, Chief Executive Officer

Case Number: PC-2018-6635
Filed in Providence/Bristol County Superior Court
Submitted: 7/23/2018 3:30:19 AM
Envelope: 1658629
Reviewer: Carol M.

# EXHIBIT 6

Case Number: PC-2018-6635
Filed in Providence/Bristol County Superior Court
Submitted: 6/23/2018 3:12:59 AM
Envelope: 1638620
Reviewer: Carol M.

Case 1:18-cv-00506-WES-LDA   Document 1-1   Filed 09/12/18   Page 92 of 97 PageID #: 97

| Column A Transaction Date | Column B Event | Column C "Loan Amount" | Column D Payments | Column E Principal Payments | Column F Loan Balance | Column G Possible "Interest" | Column H Interest at 18% on Loan Balance | Column 1 Difference | Column J Days Outstanding | Column K 18% "Interest on Interest" |
|---|---|---|---|---|---|---|---|---|---|---|
| 4/12/2016 | Purchase | $ 146,498.34 | | | $ 149,998.94 | | | | | |
| 5/5/2016 | Purchase | 22,500.00 | | | 174,030.91 | 2,444.57 | 565.41 | 1,555.16 | 242 | $ 999.09 |
| 5/28/2016 | Purchase | 9,361.06 | | | 158,337.29 | 3,333.42 | 1,068.36 | 2,265.06 | 733 | Timed |
| 6/29/2016 | Purchase | 77,534.00 | | | 656,220.71 | 29,211.25 | 10,573.89 | 18,333.71 | 158 | 6,322.05 |
| 9/13/2016 | Payment | | $ 304,570.35 | (78,311.51) | 666,368.56 | 38,304.66 | 13,415.06 | 25,150.00 | 614 | 19,425.59 |
| 9/23/2016 | Payment | | 114,566.00 | 260,134.36 | 216,077.06 | 9,251.50 | 1,658.74 | 3,621.75 | 682 | 1,123.11 |
| 9/15/2016 | Payment | | 114,566.00 | 111,312.50 | 184,716.30 | 2,684.53 | 886.36 | 2,851.97 | 844 | 50,038 |
| 10/16/2016 | Payment | | 37,043.00 | 53,161.16 | 158,610.01 | 3,876.34 | 2,016.67 | 2,851.97 | 809 | 531.83 |
| 8/20/2016 | Payment | | 52,045.00 | 32,408.52 | 596,115.32 | 165.30 | 135.68 | 29.57 | 505 | 96.29 |
| 11/4/2016 | Payment | | 43,024.00 | 98,752.97 | 64,363.33 | 569.15 | 111.67 | 457.51 | 204 | 135.25 |
| 11/9/2016 | Payment | | 10,763.00 | 15,343.39 | 54,634.18 | 1,398.04 | 66.62 | -2,946.66 | 466 | 1,061.34 |
| 11/18/2016 | Payment | | 46,245.00 | 44,447.13 | 8,971.77 | 397.77 | 281.48 | 87.27 | 555 | 102.80 |
| | Payment | | 70,968.76 | 16,979.72 | | 91.84 | | -8.84 | 949 | 21.84 |
| | | $ 356,874.54 | $ 908,975.36 | 359,974.54 | | $ 95,995.92 | 29,903.56 | 80,981.50 | | $ 19,527.05 |

Certificate: To calculate the foregoing, I treated the purchase amounts as a series of "Loan Amounts" (Column C) and computed an effective interest rate based on the Payments received (Column D). The Possible "Interest" (Column G) above reflects, counterfactually, what the interest charges would have been if this transaction were a loan. In Column H, I calculated what the interest component of the repayments would have been using an interest rate of 18%. Counterfactually assuming that this is "interest," I then applied Section 687.04(2) to determine the amount of any alleged overcharge taken (Column I). Then I calculated the interest on the alleged overcharge, which is 18% (Column K)



STATE OF RHODE ISLAND AND          PROVIDENCE PLANTATIONS

# SUPERIOR COURT

## SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>PC-2018-6011 |
| **Plaintiff**<br>Duffy & Sweeney, Ltd.<br>v.<br>**Defendant**<br>Old Republic Insurance Company | **Attorney for the Plaintiff or the Plaintiff**<br>William M Dolan |
| | **Address of the Plaintiff's Attorney or the Plaintiff**<br>ADLER POLLOCK & SHEEHAN PC<br>ONE CITIZENS PLAZA 8TH FLOOR<br>PROVIDENCE RI 02903 |
| Licht Judicial Complex<br>Providence/Bristol County<br>250 Benefit Street<br>Providence RI 02903<br>(401) 222-3250 | **Address of the Defendant**<br>No Known Address |

**TO THE DEFENDANT, Old Republic Insurance Company:**

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 8/22/2018. | /s/ Henry Kinch<br>Clerk |

Witness the seal/watermark of the Superior Court

SC-CMS-1 (revised July 2014)



STATE OF RHODE ISLAND AND     PROVIDENCE PLANTATIONS

## SUPERIOR COURT

| | |
|---|---|
| **Plaintiff**<br>Duffy & Sweeney, Ltd.<br>v.<br>**Defendant**<br>Old Republic Insurance Company | **Civil Action File Number**<br>PC-2018-6011 |

### PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, Old Republic Insurance Company, by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person of suitable age and discretion _____

Address of dwelling house or usual place of abode _____

_____

Age _____

Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.

Name of authorized agent _____

If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

_____

☐ With a guardian or conservator of the Defendant.

Name of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.

Name of person and designation _____

Page 1 of 2

SC-CMS-1 (revised July 2014)



STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:

☐ By delivering said papers to an officer or a managing or general agent.

Name of person and designation _____

☐ By leaving said papers at the office of the corporation with a person employed therein.

Name of person and designation _____

☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.

Name of authorized agent _____

If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

_____

☐ I was unable to make service after the following reasonable attempts: _____

_____

| SERVICE DATE: ___ / ___ / ___ | SERVICE FEE $ _____ |
|---|---|
| Month    Day    Year | |

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE

SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

_____

Signature

State of _____

County of _____

On this _____ day of _____, 20___, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

Notary Public: _____

My commission expires: _____

Notary identification number: _____

Page 2 of 2

SC-CMS-1 (revised July 2014)

SC-CMS-1 (revised July 2014)

STATE OF RHODE ISLAND AND  PROVIDENCE PLANTATIONS

## SUPERIOR COURT

### WAIVER OF SERVICE OF SUMMONS

| Plaintiff/Petitioner<br>DUFFY & SWEENEY, LTD; MICHAEL F. SWEENEY | Civil Action File Number<br>PC-2018-6011 |
|---|---|
| Defendant/Respondent<br>OLD REPUBLIC INSURANCE COMPANY | |

| ☐ Murray Judicial Complex<br>Newport County<br>45 Washington Square<br>Newport, Rhode Island 02840-2913 | ☐ Noel Judicial Complex<br>Kent County<br>222 Quaker Lane<br>Warwick, Rhode Island 02886-0107 |
|---|---|
| ☐ McGrath Judicial Complex<br>**Washington County**<br>**4800 Tower Hill Road**<br>Wakefield, Rhode Island 02879-2239 | ☑ Licht Judicial Complex<br>Providence/Bristol County<br>250 Benefit Street<br>Providence, Rhode Island 02903-2719 |

To: William M. Dolan III, Esq.

1. I acknowledge receipt that I waive service of a summons in the above-entitled case. I have also received a copy of the complaint in this case, Language Assistance Notice, two (2) copies of this document, and a means by which I can return the signed waiver to you without cost to me.

2. I agree to save the cost of service of a summons and an additional copy of the complaint in this case by not requiring that I (or the entity on whose behalf that I am acting) be served with judicial process in the manner provided by Rule 4.

3. I (or the entity on whose behalf that I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based upon a defect in the summons or in the service of the summons.

4. I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon the opposing party within sixty (60) days after __8/30/2018_____ or within ninety (90) days after that date
<br>(date request was sent)
<br>if the request was sent outside the United States.

| Name | |
|---|---|
| OLD REPUBLIC INSURANCE COMPANY | |
| Signature                    David W. Zizik (2323) | |
| Address: Sulloway & Hollis, P.L.L.C., 40 Westminster Street, Suite 201, Providence, RI 02903 | |
| Telephone Number: 401-421-1238 | Date: 8/31/18 |

Superior-64 (revised March 2017)